**Joan M. KUZMIN, Appellant**

v.

**Richard SCHWEIKER, Secretary of Health and Human Services.**

No. 82–5705.

United States Court of Appeals, Third Circuit.

Argued June 10, 1983.

Decided Aug. 18, 1983.

Rehearing and Rehearing En Banc Denied Nov. 1, 1983.

John R. Rellick (argued), Joseph P. Burt, Northwestern Legal Services, Erie, Pa., for appellant; Jonathan M. Stein, Philadelphia, Pa., of counsel.

Diane C. Moskal, Regional Atty., Michael P. Meehan (argued), Asst. Regional Atty., Dept. of Health and Human Services, Philadelphia, Pa., J. Alan Johnson, U.S. Atty., Anthony M. Mariani, Asst. U.S. Atty., W.D. Pa., Erie, Pa., for appellee.

Before SEITZ, Chief Judge, SLOVITER, Circuit Judge and BROTMAN, District Judge.[*]

## OPINION OF THE COURT

SLOVITER, Circuit Judge.

This is an appeal by a recipient of disability benefits from summary judgment for the Secretary of Health and Human Services who terminated her benefits after determining that her disability had ceased. Appellant contends that in a disability termination case, the Secretary must show

medical improvement "to the point of 'non-disability' since the prior determination of the Secretary." Brief for Appellant at 33. The Secretary contends that such a standard would be inappropriate under the statute and inconsistent with our recent holding in *Torres v. Schweiker,* 682 F.2d 109 (3d Cir.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 823, 74 L.Ed.2d 1020 (1983). We reject the Secretary's contention, and accept for the most part the standard suggested by appellant.

## I.

## BACKGROUND

Mrs. Joan Kuzmin, appellant, was fifty years old at the time of the administrative hearing in this case. She had applied for Supplemental Security Income (SSI) benefits on March 7, 1979, alleging disability due to hypertension, heart problems, Raynaud's disease, and the effects of childhood polio. She also reported rheumatoid arthritis and hammer toes. This application was initially denied; however, a hearing was held on August 31, 1979 before an Administrative Law Judge (ALJ) in which the appellant, unrepresented by counsel, testified and submitted medical evidence in support of her disability claim. The medical evidence included a report by her treating physician, Dr. Richard Heibel, and records from St. Vincent's Health Center diagnosing Mrs. Kuzmin as having, among other things, mild chronic obstructive lung disease, Barlow's Syndrome, premature ventricular contractions, anxiety, hypertension, bursitis, and a history of polio which had impaired her motor function especially on the left and which caused extensive atrophy in her legs. Dr. Tavana reported in a letter that he saw Mrs. Kuzmin for acute arthritis of the left wrist and that an x-ray showed degenerative disease of the distal ulna. Further, a report by Dr. Fortune stated that Mrs. Kuzmin suffered from pain in the left lower back area and left leg, from

---

[*] Hon. Stanley S. Brotman, United States District Judge for the District of New Jersey, sitting by designation.

hammer toes of the right foot, a protruding left rib cage, and swollen and painful joints of the right hand.

On September 13, 1979, the ALJ concluded without an opinion that Mrs. Kuzmin was disabled as of the date of her application in March 1979. His decision did not recite the evidence relied upon, but he noted that his decision was "wholly favorable" to the appellant. As a result, Mrs. Kuzmin began receiving benefits.

The Social Security Administration (SSA) subsequently reviewed Mrs. Kuzmin's case. Mrs. Kuzmin was examined by Dr. Skovron at the SSA's request on October 25, 1980. The SSA concluded that Mrs. Kuzmin could engage in some form of sedentary work. A notice of November 14, 1980 informed Mrs. Kuzmin of the SSA's intention to terminate her SSI benefits as of December 1980 because it determined her disability to have ceased in October 1980.

Mrs. Kuzmin appealed this decision. At a hearing before another ALJ on February 25, 1981, the record consisted of all the evidence before the first ALJ, testimony by the again unrepresented appellant, and newly submitted exhibits. The new exhibits included the report by Dr. Skovron based on his examination of the appellant on October 25, 1980. This report stated, *inter alia,* that Mrs. Kuzmin had a protruding abdomen, mild degenerative changes in the small joints of both hands, a light lumbar scoliosis, partial post-polio paralysis of the left lower extremity, atrophy of the left buttock, thigh, and calf, and hammer toes of the right foot. The record also included a report and physical capacities evaluation by Dr. O.S. Suppa, who had earlier treated Mrs. Kuzmin.

Mrs. Kuzmin submitted two letters and progress notes from Dr. Heibel. In the first, dated September 8, 1980, Dr. Heibel described the appellant as suffering from fourteen medical impairments and concluded that Raynaud's Phenomenon, which makes it difficult for Mrs. Kuzmin to use her hands, coupled with the effects of polio and hypertension makes it difficult for her to find a suitable form of employment.

The second letter, dated February 16, 1981, stated that Mrs. Kuzmin continued to suffer from these multiple medical problems and if anything "has developed more symptoms in the last year and is not a reasonable person for employment."

The ALJ ruled on May 13, 1981 that Mrs. Kuzmin's disability had ceased as of October 1980, when her impairments improved. He specifically pointed to the results of Dr. Skovron's examination of the appellant on October 25, 1980. The ALJ did not refer to Dr. Suppa's physical capacities evaluation. With respect to the appellant's allegations of pain, the ALJ stated that "while claimant may experience occasional discomfort, the pain is not of the severity or duration so as to preclude the performance of substantial gainful employment. The claimant's allegation of constant and severe pain as a basis of liability [sic] is found to be not credible." Finally, in his only reference to Dr. Heibel's opinion that Mrs. Kuzmin was disabled, the ALJ stated that "the weight to be given such a statement depends on the extent to which it is supported by the complete clinical findings and that such statement shall not be determinative of the question of whether or not an individual is under a disability."

After obtaining counsel, Mrs. Kuzmin appealed this decision to the Appeals Council. She presented four new pieces of evidence: a letter dated June 23, 1981 from the Pennsylvania Bureau of Vocational Rehabilitation stating that Mrs. Kuzmin was "too disabled to work"; a letter dated October 21, 1981 from Dr. Makarowski of the Rheumatology Clinic of St. Vincent's Health Center, covering the period from April to September 1981; a letter dated October 22, 1981 from Dr. Frankovitch, an orthopedic surgeon; and a letter dated October 23, 1981 from Dr. Heibel, all stating that Mrs. Kuzmin was disabled or unable to be gainfully employed. The Appeals Council on December 28, 1981 found Mrs. Kuzmin to be "not disabled", thereby making this the final decision of the Secretary. She sought review of this decision in the district court pursuant to 42 U.S.C. §§ 405(g) (Supp. V

1981) and 1383(c)(3) (1976). The district court granted the Secretary's motion for summary judgment holding that there was substantial evidence to support a finding that Mrs. Kuzmin was "not disabled", and this appeal followed.

At oral argument we were informed by the parties that following Mrs. Kuzmin's reapplication, the Secretary again determined that Mrs. Kuzmin was disabled and entitled to SSI benefits, apparently retroactive to July 1982. Thus, the situation is that as to appellant who claims disability based on chronic physical impairments, on September 13, 1979, the Secretary found Mrs. Kuzmin disabled as of March 1979; in the decision on appeal the Secretary found that her disability ceased in October 1980; and in the most recent proceeding, the Secretary has again found that she is disabled, this time as of July 1982. This appeal concerns only the closed benefit period between January 1981 and July 1982, but it raises an important legal issue as to the standard to be applied when disability termination is at issue.

## II.

### DISCUSSION

Disability is defined both for purposes of disability insurance and SSI benefits as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than six months." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A) (1976). A person is disabled within the meaning of these provisions "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work

but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B) (1976).

Courts in reviewing final determinations by the Secretary following an administrative hearing are bound by the Secretary's findings of fact if they are supported by "substantial evidence." 42 U.S.C. §§ 405(g); 1383(c)(3) (1976). "Substantial evidence" has been defined to mean " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)).

The Secretary argues here that a finding that a disability has ceased is essentially like an initial finding of no disability.[1] Appellant Kuzmin, on the other hand, contends that a termination of benefits premised on the medical basis of a disability finding, such as here, should focus on whether the claimant's impairments have improved to the point of nondisability. Both parties agree that the ultimate inquiry is whether an individual's impairments prevent the claimant from engaging in substantial gainful activity and that a reviewing court must inquire whether the Secretary's finding is supported by substantial evidence. The difference between the parties relates to what, if any, effect must be given to the Secretary's earlier determination of disability.

The statutory language sheds no helpful light on this issue. The Act merely provides that payment of SSI benefits by reason of disability to an individual "who ceases ... to be under such disability, shall

---

1. This represents a relatively recent shift in the Secretary's position, reflected in a 1980 change in the regulations. In commentary to the 1980 regulations (20 C.F.R. §§ 404.1579, 404.1586, 404.1594 and 416.994), the Secretary explained the new policy as follows:

   At one time we would not find that disability or blindness had stopped unless the medical evidence showed that the person's condition had improved since we last determined that he or she was disabled. About three years ago, we changed this policy and began to find that disability or blindness had stopped if we found, on the basis of new evidence, that the person was not disabled or blind as defined in the law.

   45 Fed.Reg. 55,568 (1980).

continue ... through the second month following the month in which such ... disability ceases." 42 U.S.C. § 1383(a)(5) (1976). The Secretary appears to be arguing that giving any weight to his earlier determination of disability is inconsistent with our recent decision in *Torres v. Schweiker,* 682 F.2d 109 (3d Cir.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 823, 74 L.Ed.2d 1020 (1983). In *Torres,* we held that under the statute, "the burden of proof as to the medical basis of a finding of disability [remains] on the claimant at all times," both in the initial proceeding to establish disability and in a subsequent termination hearing. *Id.* at 111. We rejected the appellant's argument that in a termination proceeding, unlike an initial proceeding, "the burden of proof shifts to the Secretary to show [claimant] is no longer disabled." *Id.* It is evident from the context that we were focusing on the burden of proof as the burden of persuasion.

■ Although we held there that a prior finding of eligibility does not, of itself, establish a *prima facie* case of continuing disability, we did not otherwise consider what relevance such a prior finding had to the claimant's effort to satisfy his or her burden of proof as to continuing disability. Basic principles of fairness as well as the need to provide both the appearance and fact of consistency in the administrative process lead us to conclude that in a termination proceeding, once the claimant has introduced evidence that his or her condition remains essentially the same as it was at the time of the earlier determination, the claimant is entitled to the benefit of a presumption that his or her condition remains disabling. Such a presumption will help avoid the disconcerting picture presented by the triple administrative flip flop in this case. The presumption of a continuing disability does not affect the ultimate burden of proof. It imposes on the Secretary only the burden of going forward with evidence to rebut or meet the presumption.

We recognize that the language in some of the cases from other courts suggests that a prior disability finding raises a presumption that the medical condition itself continues. *See Patti v. Schweiker,* 669 F.2d 582, 586–87 (9th Cir.1982) (quoting *Rivas v. Weinberger,* 475 F.2d 255, 258 (5th Cir.1973)); *Musgrove v. Schweiker,* 552 F.Supp. 104, 106 (E.D.Pa.1982). We make a distinction between the issue of the existence of a medical condition and the issue of the existence of statutory disability. There is no policy reason to presume the continuation of a medical condition. Since such conditions may and do change, no consideration of administrative consistency is implicated. On the other hand, the Secretary's prior determination that a particular medical condition has resulted in a statutory disability does implicate administrative consistency. Furthermore, a presumption of a continuing condition, as referred to in the earlier cited cases, is precluded by our holding in *Torres* where we rejected the appellant's claim that the earlier determination made out a *prima facie* case of her continuing disability. 682 F.2d at 111.

The requirement that the applicant introduce some evidence to show his or her condition remains unchanged or has worsened should not impose any undue hardship. Disability recipients are likely to remain under some medical treatment or supervision. Also, in appropriate cases, the recipient may rely on medical evidence previously introduced, *see Miranda v. Secretary of Health, Education and Welfare,* 514 F.2d 996, 998 n. (1st Cir.1975), supplemented by the recipient's own testimony of the continuing condition to make out the *prima facie* case.

■ Once the burden to come forward has shifted to the Secretary, the Secretary must present evidence that there has been sufficient improvement in the claimant's condition to allow the claimant to undertake gainful activity. A similar inquiry was made in *Torres.* There the ALJ found marked improvement in Torres' condition. We concluded that although the medical evidence primarily relied upon came up with the "same diagnosis that originally provided the basis for a finding of disability," there was substantial evidence to sup-

port the conclusion that the claimant's condition "was less severe than it had previously been." 682 F.2d at 112–13.

In *Miranda v. Secretary of Health, Education and Welfare,* 514 F.2d at 998, the court enunciated the medical improvement standard in disability termination cases. Other courts have adopted a similar approach. *See Simpson v. Schweiker,* 691 F.2d 966, 969 (11th Cir.1982) (in a benefits continuation case, the court "must ascertain whether the Secretary's finding of *improvement* to the point of no disability is supported by substantial evidence"); *Hayes v. Secretary of Health, Education and Welfare,* 656 F.2d 204, 206 (6th Cir.1981) (reversed benefits termination because "the evidence does not support the conclusion that termination of [the claimant's] benefits was proper because her condition had improved"); *Shaw v. Schweiker,* 536 F.Supp. 79, 80 (E.D.Pa.1982).

▉ We conclude that ordinarily a disability beneficiary meets his or her burden to prove continuing disability by introducing evidence that the underlying condition continues, which in turn gives rise to a presumption of continuing disability.[2] However, if the Secretary were required to show evidence of improvement in all instances, it might preclude termination of benefits to some individuals whose original disability determination was made in error. We do not believe Congress intended such a result. Although it is unlikely that there is any substantial number of beneficiaries who fall within this category, the Secretary must be given the opportunity to introduce evidence that shows the original decision to

have been in error. As stated by the First Circuit in *Miranda:*

> [O]nce having found a disability, the Secretary may not terminate the benefits without substantial evidence to justify so doing. This will normally consist of current evidence showing that a claimant has improved to the point of being able to engage in substantial gainful activity; but it might also consist of evidence that claimant's condition is not as serious as was at first supposed.

514 F.2d at 998.[3] *See Shaw v. Schweiker,* 536 F.Supp. at 82.

There has been no suggestion in the record in this case or in the Secretary's brief or argument that appellant's disability benefits were terminated on the ground that the initial disability determination was clearly mistaken. In fact, notwithstanding the Secretary's litigating position, the ALJ did articulate the "improvement" standard as the applicable inquiry. He stated, "To correctly terminate benefits, the evidence must clearly demonstrate that the claimant's physical condition has improved sufficiently to allow her to undertake some form of substantial gainful activity." The ALJ found there had been such improvement.

As we set forth above, once Mrs. Kuzmin presented evidence that her condition remained the same, the Secretary was required to come forward with evidence of improvement. When the evidence before the first ALJ, who found it "wholly favorable" to Mrs. Kuzmin, is compared with the termination proceeding record, the marked similarity between the two is evident. For example, Mrs. Kuzmin's testimony about her activities and impairments was substan-

---

**2.** Nothing herein is intended to suggest that the Secretary is not free to base a disability termination on non-medical grounds. For example, if the initial disability determination was based on a finding of a lack of suitable jobs in the economy, new evidence as to the availability of such jobs would support the Secretary's decision. *See Smith v. Schweiker,* 709 F.2d 777, 781 (2d Cir.1983).

**3.** Further, as the court stated in *Miranda,* many impairments are difficult to diagnose; a proper diagnosis may require reference to

the cumulative medical history. The Secretary may grant a disability on the basis of a subjective complaint and tentative diagnosis pending the accumulation over time of sufficient indicia for a more complete evaluation. At a termination hearing, the Administrative Law Judge may appropriately contrast the relative strength or weakness of earlier medical evidence and relevant earlier events with claimant's current condition. 514 F.2d at 998 n.

tially the same at both hearings. Letters from her treating physician indicated that Mrs. Kuzmin's examination was "relatively unchanged" and that she "if anything, has developed more symptoms in the last year."

We find no substantial evidence to support the ALJ's finding that Mrs. Kuzmin's condition had improved to the point of non-disability. The second ALJ listed three medical exhibits in recounting the "current" medical evidence he apparently relied upon in concluding there was improvement. First, he mentioned an October 1980 spirometry revealing "only mild obstructive airways disease." However, a spirometry in the original record revealed "mild obstructive lung disease" and Dr. Heibel, the treating physician, had characterized Mrs. Kuzmin's condition as mild chronic obstructive lung disease. Second, the ALJ described two x-ray reports. One taken in September 1980 of the spine and pelvis showed "mild thoracolumbar scoliotic curve with convexity to the right and a normal pelvis." However, an x-ray report in the earlier record revealed "scoliosis of the dorsal spine with slight compensatory curve in the lumbar spine," and no prior report suggested that the scoliosis was extreme. A second x-ray taken in December 1980 of the lumbosacral spine revealed "only mild degenerative joint disease with no structural abnormalities." However, a report of a previous x-ray of the lumbosacral spine did not even mention degenerative joint disease.

Finally, the ALJ summarized the report of Dr. Skovron, a consultative physician, who examined Mrs. Kuzmin in October 1980, as follows:

> Physical examination revealed slight lumbar scoliosis of the back with limitations of 76° of flexion, and 14° lateral flexion, bilaterally. Atrophy of the left buttock, thigh and calf was shown, with marked weakness of the left hip, knee and ankle. Reflexes of the left lower extremity were absent, and there was no power present. The upper extremities revealed only mild degenerative changes in the small joints of both hands and fair grip, and good

inability of the shoulders, elbows, and wrists, with no reflex, sensory, or motor deficits. X-ray revealed only mild degenerative changes of the lumbar spine; mild lumbar scoliosis, and normal pelvis. An inch leg length shortening was present in the left lower leg. Bilateral pronated feet and hammertoes of the right 2nd, 3rd, 4th and 5th toes were noted. The physician recommended continued conservative management for claimant's condition, and against surgical intervention.

This report largely supports the existence of several impairments, such as the post-polio paralysis, contained in the earlier record. The comment that degenerative changes in both hands were "mild" is not contradicted by the earlier reports.

The Secretary's brief and the district court's opinion rely upon a physical capacities evaluation report by Dr. Suppa dated September 1980 as supporting a conclusion of medical improvement. This report stated Mrs. Kuzmin could sit for eight hours, stand for six hours, and walk for five hours in an eight-hour day. Further, it stated Mrs. Kuzmin had no temperature restrictions, could lift up to twenty pounds frequently, use her hands and feet for various movements, and climb and reach above shoulder level. Neither the ALJ nor the Appeals Council even mentioned this report, and we believe there are reasons why it may not have been relied upon. The report was filled out at the request of the Secretary six months after Dr. Suppa had examined Mrs. Kuzmin. Furthermore, unlike Dr. Skovron, who provided actual measurements of range of motion, Dr. Suppa left these measurements blank on the form. Dr. Suppa's conclusion that Mrs. Kuzmin could use her left foot for repetitive movements was contradicted by Dr. Skovron's report, referred to by the ALJ, that she had no reflexes in her left lower extremity, it being almost "flail". We do not believe this report can constitute substantial evidence to support a finding that Mrs. Kuzmin's condition had improved to the point of non-

disability,[4] particularly in light of the new evidence submitted to the Appeals Council. The four letters, three from doctors and the fourth from the Pennsylvania Bureau of Vocational Rehabilitation, to whom the SSA itself refers claims for evaluation pursuant to 42 U.S.C. § 1382d (Supp. V 1981), unanimously supported Mrs. Kuzmin's claim of disability.

### III.

### CONCLUSION

In light of the foregoing, we believe a remand could serve no useful purpose in the circumstances presented by this case. The reinstatement is for a closed period; the ALJ applied the correct legal standard of improvement, but his finding was not supported by substantial evidence. Therefore, we will reverse and remand to the district court with instructions to remand to the Secretary for reinstatement of benefits for the period between the termination and subsequent resumption of benefits.

---

4. Because of our disposition of this case, it is not necessary to reach appellant's further contentions that she was deprived of a full and fair hearing before the Administrative Law Judge and that even under the standard advocated by the Secretary the finding of no disability is not supported by substantial evidence.