**Joseph MAKOVICS, Plaintiff,**

v.

**Richard SCHWEIKER, Secretary of Health and Human Services, Defendant.**

**Civ. A. No. 82–445 MMS.**

United States District Court,
D. Delaware.

Dec. 12, 1983.

Brian J. Hartman, Wilmington, Del., for plaintiff.

Peggy Ableman, Asst. U.S. Atty., Wilmington, Del., for defendant.

## OPINION

MURRAY M. SCHWARTZ, District Judge.

Plaintiff, Joseph Makovics, brought this action under 42 U.S.C. § 405(g) (1976), seeking review of a final decision of the Secretary of Health and Human Services which denied plaintiff's claim for social security disability benefits. The Magistrate has issued a Report and Recommendation proposing affirmance of the Secretary's decision. Plaintiff has filed objections to that Report.

Joseph Makovics initially applied for disability benefits on May 11, 1979. Makovics was 42 years old at that time. He claimed that he became disabled on April 12, 1979, due to numerous medical ailments, the most significant of which was a heart condition. Makovics' initial application was granted upon a determination that he was disabled. The Social Security Administration, however, later randomly selected Makovics' case for independent review. Upon review the Administration determined that Makovics, in fact, was not disabled. With no lawyer to advise him, Makovics chose not to appeal the Administration's termination decision. Instead, on August 26, 1980, he filed a second application for disability benefits, claiming disability as of April 9, 1979. This second claim was denied. Makovics then requested a hearing. At an initial hearing held on July 9, 1981, Makovics requested assistance of an attorney

and the case was continued for that purpose. Makovics had his hearing, with aid of counsel, on October 26, 1981. The ALJ issued a decision denying Makovics' claim on February 10, 1982.

The record before the ALJ contained evidence of a variety of complaints and physical impairments. The Magistrate summarized Makovics' testimony as follows:

> ... his physical condition is such that he cannot work an eight hour day. He can only stand for about a half hour; after walking a few blocks, his ankles swell and he must lie down; after sitting for a half hour, his legs cramp up and he must move around; he gets dizzy if he bends over and he has problems with squatting and climbing; his hands cramp up in cold weather and he does not have any strength in his hands for pushing and pulling; he could not perform a job requiring use of foot pedals or fine hand manipulation.... [H]e suffers heart pains if he tries to do something quickly
> ....
>
> .    .    .    .    .
>
> He does few chores, has no hobbies, takes several short naps during the day, gets about eleven hours of sleep at night, and spends most of the day lounging around the house....

(Mag. Report at 3–4).

The Magistrate summarized medical reports from Makovics' various hospitalizations as diagnosing chest pain of undetermined etiology, gastrointestinal reflux, cardiac arrhythmia, hypertension, alcohol-related liver disease, mild bronchitis, varicose veins, and some obstruction of blood supply to the heart. (*Id.* at 4).[1]

Despite this evidence, the ALJ denied disability benefits, primarily on the basis of 1) a report and letter from Makovics' personal physician, 2) testimony from a voca-

tional expert, and 3) the ALJ's personal observations of Makovics' appearance during the hearing. These three bases are described below.

1. *Dr. Goldenberg's Report and Letter.* Makovics' personal physician, Dr. Edward M. Goldenberg, completed a Physical Capacities Evaluation of Makovics by checking certain boxes in response to multiple choice questions. (Doc. 8 at 187). The Evaluation asked for opinions based solely on medical findings, not on the patient's subjective complaints. Dr. Goldenberg checked boxes to indicate that Makovics could sit 5–8 hours, could occasionally lift up to 10 lbs., could use his hands for repetitive simple grasping and fine manipulation, but not for pushing and pulling, could use his feet for repetitive movements such as operating foot controls, could bend and squat occasionally, could reach above shoulder level, but could not climb or crawl. In addition to the Physical Capacities Evaluation, Dr. Goldenberg wrote a letter on August 27, 1979, explaining that Makovics was "unable to perform any but the most sedentary types of employment" and that, because of a seizure disorder, Makovics could not work around dangerous equipment or at heights. (Doc. 8 at 221).

2. *Vocational Expert's Testimony.* At Makovics' hearing, the ALJ asked several hypothetical questions of Bernard Orr, a vocational expert. The first hypothetical asked Orr to assume that Makovics had all the limitations, restrictions and pain that Makovics claimed to suffer. With those conditions, Orr opined, Makovics could not perform any gainful employment. (Doc. 8 at 87). Orr then was asked to assume that Makovics had "a history of treatment for various complaints, including but not limited to a heart condition," and that Makovics could sit for 5 to 8 hours, lift up to ten pounds, use his hands for simple grasping

---

**1.** The ALJ's findings were similar to the Magistrate's. The ALJ's decision contained the following finding:

> The record reflects a history of complaints and treatment of exertional and non-exertional impairments, principally chest pain of undetermined etiology, hiatal hernia, gastroin-

testinal reflux, cardiac arrhthmias [sic], hypertension, mild obesity, hepatomagaly, precirrhotic hepatic changes, mild bronchitis, alcoholism, chronic obstructive pulmonary disease, varicose veins, coronary artery disease, angina, seizure disorder, nervous condition. (Doc. 8 at 22).

and fine manipulation, use his feet for repetitive foot control operations, bend and squat and reach above shoulder level. (Doc. 8 at 87–88). (Those assumptions substantially paralleled Dr. Goldenberg's Physical Capacities Evaluation.) Orr replied that Makovics could work at numerous jobs with those limitations. Orr mentioned, as examples, the jobs of toll collector, bench assembler of small products, inspector-testor or inspector-gauger in a production shop, cashier in a self-parking lot and cook helper or vegetable preparer in a restaurant. (*Id.* at 88–89). Upon cross-examination, however, Orr testified that Makovics could not perform these jobs if 1) Makovics could sit only five hours in an eight-hour day, 2) had to lie down for fifteen minutes twice per day or 3) became weak from taking medicine. (*Id.* at 90–91, 95–97, 102–103).

3. *Personal Observations.* The ALJ rejected Makovics' allegations of "constant severe and intractable pain." (*Id.* at 20). He asserted that:

> while objective medical evidence provides a physiological basis for some discomfort, the medical findings as a whole do not support the level of pain alleged. Claimant's testimony as to his daily activities indicate the capacity to perform more than sporatic [sic], intermittent, or transitory activities, contraindicating disabling pain. At the hearing, he entered and left the room, took his seat and rose from it, and participated actively, fully and fluidly in the proceedings without indication of functional limitations or of discomfort which distracted his attention from the matter at hand or interfered with his thought processes. Overall, the Administrative Law Judge was impressed that the claimant's testimony as to pain and physical limitations was too vague, contrived, tentative, and self-serving to be accorded full credibility.

(Doc. 8 at 20).

■ Based on this record, the ALJ applied the Social Security Administration "grid" regulations, 20 C.F.R., Part 404, Subpart P, Appendix 2, which are used to determine functional capacity to perform work based on a claimant's age, education and work experience. *See generally Santise v. Schweiker,* 676 F.2d 925 (3d Cir. 1982). These regulations may be relied on fully only with regard to exertional limitations, *see Burnam v. Schweiker,* 682 F.2d 456, 457 (3d Cir.1982), but the ALJ concluded that Makovics' work capacity was not diminished by nonexertional impairments. (Doc. 8 at 23). Upon application of the grid regulations, specifically Rules 201.26 and 201.24, the ALJ concluded that Makovics was not disabled. (Doc. 8 at 21, 23).

This decision was affirmed by the Appeals Council on June 14, 1982.

Plaintiff's motion for summary judgment and his objections to the Magistrate's Report and Recommendation raise numerous grounds for reversal. Basically, plaintiff argues that the ALJ applied an erroneous standard of proof and that the record contained insubstantial evidence to support the ALJ's decision. I agree that the ALJ misunderstood plaintiff's burden of proof and, in addition, believe that the ALJ failed to explain adequately the basis for his decision. This opinion will first discuss the burden of proof problem.

I. *Burden of Proof*

The record indicates that the ALJ evaluated the evidence presented at Makovics' hearing under a belief that Makovics at all times held the burden of producing evidence of a disability. In his written opinion the ALJ made the following summary statement: "Having considered all the evidence of record, the administrative law judge finds no grounds to disturb the prior denial determination at this time." (Doc. 8 at 15). This statement clearly demonstrates that the ALJ left with Makovics the burden of showing that the Secretary's termination decision was erroneous. Nothing in the ALJ's opinion or in the hearing transcript suggests that the ALJ placed any burden of production on the Secretary or

created any presumption in favor of plaintiff.[2]

This allotment of the burden of proof was erroneous for two reasons.

### A. *Kuzmin v. Schweiker*

The first reason follows from the recent Third Circuit Court of Appeals decision in *Kuzmin v. Schweiker*, 714 F.2d 1233 (3d Cir.1983).[3] There, the Court of Appeals differentiated between a denial of an initial application for disability benefits and a termination of previously granted benefits. The *Kuzmin* court stated that although under *Torres v. Schweiker*, 682 F.2d 109 (3d Cir.1982), *cert. denied*, — U.S. —, 103 S.Ct. 823, 74 L.Ed.2d 1020 (1983), the burden of proof remains on the claimant in a termination case to show a medical basis of a disability, "once the claimant has introduced evidence that his or her condition remains essentially the same as it was at the time of the earlier determination, the claimant is entitled to the benefit of a presumption that his or her condition remains disabling." *Kuzmin*, 714 F.2d at 1237. Thus, once the claimant has proved an unchanged condition, the Secretary has "the burden of going forward with evidence to rebut or meet the presumption [of continuing disability]." *Id.* To meet its burden, "the Secretary must present evidence that there has been sufficient improvement in the claimant's condition to allow the claimant to undertake gainful activity." *Id.* In addition, the Secretary may introduce evidence showing that the original disability was made in error. *Id.* at 1238.

■ The evidence presented at Makovics' hearing showed that his medical condition remained at least as serious as at the time of his original application. Between the time of his initial application for benefits in May of 1979 and the day of his hearing in October, 1981, Makovics was twice hospitalized—once for chest pain and a second time when he collapsed after working only four hours as a janitor at the YMCA. The ALJ never found that Makovics' condition had improved nor does the record support such a conclusion. Thus, under *Kuzmin*, Makovics was entitled to a presumption of a continuing disability.

Nothing in the record in this case suggests that the ALJ applied the standard set forth in *Kuzmin*. Instead, the record shows only that the ALJ left the burden of proof and of production on Makovics throughout the proceeding to show that the Secretary's termination decision was erroneous. Indeed, it appears that the ALJ granted a presumption of validity to the Secretary's termination decision rather than a presumption of continuing disability to Makovics. This is plainly inconsistent with *Kuzmin*.

The Court does not believe that Makovics' failure to appeal the Secretary's termination decision affects the applicability of *Kuzmin* to this case. An unrepresented social security disability benefit recipient, ignorant of the intricacies of pleading and of burdens of production and persuasion, should not suffer for his uninformed decision to file a second claim rather than pursue an appeal. The essence of Makovics' grievance is the same as was Kuzmin's. After receiving an initial finding of disability, Makovics had his benefits removed upon random administrative review of his case. The *Kuzmin* court was concerned with "the disconcerting picture" of the "administrative flip flop" that occurs in disability termination decisions. 714 F.2d at 1237. Makovics was a victim of the same administrative flip flop, and the Secretary should be put to the same burden as he was in *Kuzmin*.

On remand, Makovics is entitled to a presumption that his disability continues,

---

2. Further evidence that the ALJ placed no burden on the Secretary can be found in a question that he asked of plaintiff's counsel at the hearing. Counsel was asked if he had explained to Makovics "what his burden of proof is, in order to establish entitlement of benefits under the provisions of Title II." (Doc. 8 at 45).

3. The Court notes that this decision was not yet issued at the time of the Magistrate's March 22, 1983, Report and Recommendation.

putting the burden on the Secretary to come forward with evidence that his original decision was erroneous.

### B. *Proof of Other Jobs*

■ The ALJ's allocation of burdens below was erroneous for a second reason. Once a claimant proves that he can no longer perform his previous job, the Secretary must show that the claimant can perform substantial gainful employment in a different field. *See Dobrowolsky v. Califano*, 606 F.2d 403, 406 (3d Cir.1979); *Chicager v. Califano*, 574 F.2d 161, 164 (3d Cir.1978). Although the Third Circuit has declined to label the Secretary's responsibility as either a "burden of persuasion" or "burden of production," *see Dobrowolsky*, 606 F.2d at 406, the Court has clearly mandated that an ALJ may not place the entire burden of showing inability to perform other jobs on the claimant. *See id.; Stout v. Schweiker*, 514 F.Supp. 1054, 1055 (W.D. Pa.1981). The record below indicates that this is exactly what the ALJ did. This Court, therefore, must remand the case for application of the proper allocation of burden of proof.

### II. *Sufficiency of the Evidence*

Even if the ALJ had applied the proper burden of proof, this Court still would be forced to remand the case because the ALJ failed to articulate sufficient reasons for his decision. On remand, should the ALJ again deny benefits, he must more carefully and precisely explain the foundation of his decision.

■ The Secretary's findings of fact are conclusive only if supported by "substantial evidence." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); *Van Horn v. Schweiker*, 717 F.2d 871, 873 (3d Cir.1983). "Substantial evidence" has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Dobrowolsky v. Califano*, 606 F.2d at 406, *quoting Richardson v. Perales*, 402 U.S. at 401, 91 S.Ct. at 1427. The substantial evidence standard does not

allow a reviewing court to give automatic deference to the ALJ's determination. This is because the Secretary has an obligation to show "leniency ... in establishing the claimant's disability, and ... the Secretary's responsibility to rebut it [must] be strictly construed." *Dobrowolsky*, 606 F.2d at 407. "[D]ue regard for the beneficent purposes of the legislation requires that a more tolerant standard be used in ... [the] administrative proceeding than is applicable in a typical suit in a court of record where the adversary system prevails." *Hess v. Secretary of HEW*, 497 F.2d 837, 840 (3d Cir.1974). With this in mind, this Circuit has held that "a reviewing court may remand a case to the Secretary for good cause, 'where relevant, probative and available evidence was not explicitly weighed in arriving at a decision on the plaintiff's claim for disability benefits." *Dobrowolsky*, 606 F.2d at 407, *quoting Saldana v. Weinberger*, 421 F.Supp. 1127, 1131 (E.D.Pa.1976).

Plaintiff raised numerous specific objections to the Magistrate's Report which attack the sufficiency of evidence to support the ALJ's decision. The more significant objections will be discussed below.

### 1. *Physical Capacities Report*

Mr. Orr testified at the hearing that if Makovics could sit for only five hours per day he could not perform any of the jobs specified by Orr. (Doc. 8 at 91). Thus, as plaintiff properly indicates, the evidence relating to Makovics' ability to sit is crucial to the ALJ's decision. Yet the only direct evidence on this issue is the physical capacities report in which Dr. Goldenberg marked the "5–8 hour" box. Plaintiff contends that this report does not constitute substantial evidence that Makovics could sit for more than five hours per day. It is just as likely, plaintiff asserts, that Dr. Goldenberg believed Makovics could sit only five hours per day as it is that he believed Makovics could sit for eight hours.

■ Plaintiff's objections are well taken. The Magistrate, however, dismissed plain-

tiff's objections, relying on Dr. Goldenberg's letter as additional evidence that Makovics could sit for a longer period of time. Dr. Goldenberg stated in his letter, as mentioned earlier, that Makovics could not perform "any but the most sedentary type of employment." "Reading the two reports together," the Magistrate explained, "it is reasonable to conclude that Doctor Goldenberg is of the opinion that plaintiff can perform some types of work which require sitting for eight hours." (Mag.Rep. at 9). Dr. Goldenberg's letter, however, was not written to explain Makovics' ability to meet the grid regulations' definition of "sedentary work." Furthermore, Dr. Goldenberg is not a vocational expert. Thus, Dr. Goldenberg's use of the phrase "sedentary work" in his letter is of no probative value. His letter is no more informative about Makovics' capacity for prolonged sitting than was the "5–8" box on the physical capacities form. The ALJ therefore had no basis, and, indeed, asserted no basis, for concluding that Makovics was capable of sitting for more than five hours. Given Mr. Orr's testimony on cross-examination, the Court concludes that the ALJ improperly relied on the physical capacities report in concluding that Makovics could perform permanent employment.

### 2. Degree of Pain

Plaintiff contends that the ALJ set too high a standard of pain necessary to constitute a disability. He contends that the ALJ adopted an erroneous standard of "constant, severe and intractable pain."

■ The Court agrees that the ALJ applied too harsh a standard. Pain need not be constant in order to be disabling. *See Olson v. Schweiker,* 663 F.2d 593, 597 (5th Cir.1981). A claimant's intermittent pain may be disabling if it is so severe at times that it prevents the claimant from performing gainful employment. *Id.*

The ALJ found that plaintiff's testimony of his daily activities showed that plaintiff could perform "more than sporatic [sic], intermittent, or transitory activities." (Doc. 8 at 20). But this testimony does not indicate that plaintiff was free from intermittent severe pain that would prevent him from holding a full-time job. Plaintiff testified that, during the course of a day, he walks several times to a neighborhood corner where he stands for twenty minutes to half an hour and returns home. Sometimes he gets a ride to visit a friend or do errands. He takes several cat naps during the day when he becomes "woozy." He is able to wash, shave and bathe himself, but he does no household work except for washing dishes and occasionally buying a loaf of bread at the corner store. While this testimony certainly is inconsistent with a claim of *constant* pain, it is not inconsistent with a claim of disabling pain. The ALJ also noted plaintiff's pain-free appearance at the hearing in support of his finding that Makovics' pain was not disabling. Again, a claimant's apparent lack of pain during several hours of one day does not preclude the existence of disabling pain. On remand, if a disability is not found, the ALJ must articulate reasons why Makovics' pain is not disabling.

### 3. Defective Hypothetical

Makovics contends that one of the ALJ's hypothetical questions addressed to Mr. Orr was defective because it required the vocational expert to interpret medical evidence in violation of *Dobrowolsky v. Califano,* 606 F.2d at 409 & n. 19, 410. In particular, plaintiff objects to the following language: "Let us assume that I find the claimant has a history of treatment for a variety of complaints, including but not limited to a heart condition, and he has been hospitalized for these conditions, . . ." (Doc. 17 at 5, *quoting* Doc. 8 at 87–88).

The ALJ's hypothetical further asked Mr. Orr to assume the information contained in Dr. Goldenberg's physical capabilities report, which plaintiff concedes is normally a proper basis for examination of a vocational expert. Because these specific physical limitations were incorporated in the hypothetical, the Magistrate explained that it became "irrelevant what [Makovics'] medical complaints are." (Mag.Rep. at 10).

Plaintiff responds that the Magistrate erroneously assumed that Makovics' "variety of complaints" were "co-terminous with the physical capacities evaluation," and that it is impossible to know what non-exertional or other medical conditions Mr. Orr considered. (Doc. 17 at 5).

■ The Court agrees with plaintiff. As later cross-examination of Mr. Orr indicated, if certain of Makovics' non-exertional complaints were considered, such as Makovics' need to lie down or his adverse side effects from drugs, Mr. Orr would have reached a different conclusion. The ALJ's hypothetical required Mr. Orr to evaluate the medical evidence and determine for himself which "ailments" he should give credence to. This went beyond the proper role of a vocational expert. *See Dobrowolsky v. Califano*, 606 F.2d 409, 410 (3d Cir.1979).

Plaintiff also argues that the ALJ's hypothetical mischaracterized Dr. Goldenberg's physical capacities report by asking Mr. Orr to assume that Makovics could lift up to ten pounds and bend without limitation. The physical capacities report, Makovics argues, stated only that he could "occasionally bend and lift up to ten pounds." (Doc. 17 at 6). Makovics asserts, furthermore, that the grid regulations' definition of sedentary work requires an ability to lift up to ten pounds "on a regular basis." (Doc. 12 at 20). The Magistrate responded by explaining that any overstatement by the ALJ of the physical capacities report is inconsequential because, the Magistrate stated, the grid regulations require no more than *occasional* lifting of up to ten pounds. (Mag.Rep. at 10–11.)

■ The Court agrees with the Magistrate. Sedentary work is defined as follows:

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.

20 C.F.R. § 404.1567(a). As the Magistrate explained, the placement of the word "occasionally" should not be read as raising an inference that the lifting of objects besides docket files, ledgers and small tools will be more than occasional. Furthermore, the next higher exertional requirement category, "Light Work," is defined as involving "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b). The Magistrate correctly explained that "[t]he use of the adjective 'frequent' in connection with lifting up to ten pounds in light work and its absence in the exertional requirements connected with sedentary work creates an inference that lifting weights of up to ten pounds is only infrequent or occasional in sedentary work." (Mag.Rep. at 11).

### 4. Sit and Squirm Test

■ Plaintiff also argues that the ALJ improperly relied on personal observations of the plaintiff as a basis for evaluating the validity of complaints about pain. Such reliance on personal observation, plaintiff correctly observes, has been widely condemned as a "sit and squirm test." *See Van Horn v. Schweiker*, 717 F.2d at 874; *Freeman v. Schweiker*, 681 F.2d 727, 731 (11th Cir.1982). The Court does not agree with plaintiff, however, that *partial* reliance on a witness' appearance at a hearing is improper. Although the Third Circuit Court of Appeals has rejected undue reliance on personal observations in contradiction to medical evidence, *see Kelly v. Railroad Retirement Board*, 625 F.2d 486 (3d Cir.1980); *Lewis v. Califano*, 616 F.2d 73, 76–77 (3d Cir.1980), it has also recognized that "physical appearance may be a factor to consider." *Lewis v. Califano*, 616 F.2d at 76. The ALJ, therefore, properly relied on observations of Makovics' appearance in the hearing room, in conjunction with other evidence, when he assessed the credibility of Makovics' testimony regarding pain. As stated earlier, however, the ALJ applied an overly harsh standard of pain necessary for a finding of disability, and thus the ALJ's findings relating to Makovics' appearance do not save the ALJ's ultimate rejection of Makovics' claim of disabling pain.

**1296**

**5. *Hand Strength***

■ The vocational expert explained that a bench assembler must clamp and squeeze materials together using a tool. The record, however, contains no evidence that plaintiff has the hand strength necessary to squeeze and clamp. The Secretary therefore failed to meet his burden of showing that Makovics could perform the job of bench assembler. *See Dobrowolsky v. Califano,* 606 F.2d at 406; *Stout v. Schweiker,* 514 F.Supp. 1054, 1055 (W.D. Pa.1981).

**6. *Drug Side Effects***

■ The ALJ failed to address Makovics' claims that he became weak due to side effects from taking medication. Plaintiff correctly states that the ALJ must make a finding on a claimant's complaint of adverse side effects from drugs. *See Figueroa v. Secretary of Health, Education and Welfare,* 585 F.2d 551, 553–54 (1st Cir.1978).

**7. *Necessity of Lying Down***

There is substantial testimony from Makovics suggesting that he has to lie down and raise his legs several times a day. (See Doc. 8 at 53, 81, 107). The Magistrate interpreted this testimony as meaning only that Makovics must raise his legs, not that he must lie down. (Mag.Rep. at 13). At the hearing, however, the ALJ apparently interpreted Makovics' testimony in plaintiff's favor. (See Doc. 8 at 107). Furthermore, Mr. Orr testified that if Makovics had to lie down he could not work as a bench assembler. (Doc. 8 at 95–96). The ALJ, however, made no mention in his opinion of this probative evidence in Makovics' favor as he was required to do. *See Dobrowolsky v. Califano,* 606 F.2d at 407.

**8. *Non-exertional Limitations***

■ The ALJ made no specific findings on some of Makovics' claims of non-exertional limitations. The ALJ issued only a conclusory finding that Makovics' ability to perform sedentary work under the grid regulations was "not contraindicated by

consideration of non-exertional impairments." (Doc. 8 at 23). This terse statement does not fulfill the ALJ's responsibility to explain his basis for rejecting plaintiff's complaints of non-exertional impairments. *See Smith v. Harris,* 644 F.2d 985, 989 (3d Cir.1981); *Gober v. Mathews,* 574 F.2d 772, 776 (3d Cir.1978); *Baerga v. Richardson,* 500 F.2d 309, 312–13 (3d Cir. 1974), *cert. denied,* 420 U.S. 931, 95 S.Ct. 1133, 43 L.Ed.2d 403 (1975).

**III. *Conclusion***

On remand, the ALJ must grant a presumption of disability to Makovics and must place on the Secretary 1) the burden of producing evidence that the original award of disability was erroneous and 2) the burden to show that Makovics can perform substantial gainful employment. The ALJ, should he again deny the plaintiff benefits, must set forth with specificity his reasons for rejecting each of plaintiff's claims of impairment and his reasons for finding that plaintiff can perform substantial gainful employment.

An appropriate order will issue.