Charles CANNON, Plaintiff,

v.

Margaret M. HECKLER, Secretary of Health and Human Services, Defendant.

Civ. A. No. 83–4142.

United States District Court, D. New Jersey.

Feb. 5, 1986.

As Amended Feb. 28, 1986.

Gerald M. Zashin, Cedar Grove, N.J., for plaintiff.

Thomas W. Greelish, U.S. Atty., Newark, N.J., by Laurie J. Gentile, Asst. U.S. Atty., for defendant.

STERN, District Judge.

This case comes before the Court on a motion by claimant Charles Cannon to vacate this Court's order of June 13, 1984, which remanded this case to the Secretary of Health and Human Services for proceedings consistent with *Kuzmin v. Schweiker*, 714 F.2d 1233 (3d Cir.1983). In moving to have that order vacated, claimant seeks to have this Court reverse the Secretary's termination of claimant's entitlement to a period of disability and disability insurance benefits. In addition, claimant moves for an award of attorney's fees under the Equal Access to Justice Act, 28 U.S.C. § 2412 (1985). For reasons explained below, claimant's motion will be granted in its entirety.

## FACTS

Charles Cannon's odyssey through the Social Security Administration (SSA) began three years ago on January 11, 1983, when he received notice of the SSA's determination that he had regained the ability to engage in substantial gainful activity. Effective in March 1983, the SSA terminated the disability insurance benefits Cannon had been receiving for four years, since 1979, when the SSA found he suffered from arteriosclerotic heart disease. Cannon applied for reconsideration of his termination without success. A hearing was held before an Administrative Law Judge (ALJ) on July 15, 1983. In an opinion of August 26, 1983, the ALJ held that Cannon's disability had ceased. This determination became the final decision of the Secretary when it was affirmed by the Appeals Council on October 5, 1983.

At the time of the ALJ's hearing, Cannon was forty-nine years old. He has an eighth-grade education and was employed as an assembly line worker at a Ford Motor Co. plant from 1970 to 1979. Prior to that job, Cannon worked as a hairdresser. The record is inconsistent on the number of years Cannon spent as a hairdresser. The ALJ classified the hairdresser job as light work. The assembly line job, on the other hand, required heavy lifting, pushing and pulling.

At the ALJ's hearing, Cannon testified that he suffered severe chest pains on January 30, 1979 while at work. He was subsequently admitted to John F. Kennedy Hospital in Menlo Park, New Jersey for two weeks and shortly thereafter to St. Joseph's Hospital for an angiogram. Cannon testified that he has not been rehospitalized, except for an appendectomy in 1981, and that he has seen Dr. Arthur L. Roth approximately once per month. He continues to experience regular chest pains which he relieves by doses of nitroglycerin. He also takes Inderal and Isordil. He said the medication makes him sleepy.

Claimant also testified that he has trouble sitting for any length of time because his feet, right thigh and buttock become numb. He reported that he could not walk more than two blocks without getting tired, that he becomes short of breath when climbing stairs, and that he has trouble bending, pushing, pulling and reaching because he quickly becomes short of breath. He does almost no household chores and watches television most of the time. After the 1979 attack, he once took a two-week vacation in California.

In written statements that were part of his application for continuation of benefits and part of the record before the ALJ, Cannon claimed his condition had worsened since 1979.

The medical evidence before the ALJ consisted of the following. First, Dr. Burton M. Cohen, M.D., a state consultative physician, submitted his findings after conducting a treadmill test using the Bruce protocol. The report, dated December 13, 1982, notes that after plaintiff had walked six minutes and ten seconds, he became very short of breath, began coughing, and rales appeared. The test was stopped at this point, although Cannon experienced no pain. ST segment depressions appeared in lead I, and accentuated in lead II and in lead III. After ten minutes, the depressions had returned almost to baseline. Dr. Cohen concluded:

I would regard this as a positive test with the notation that although the patient did not experience pain, the development of signs of left ventricular failure suggested poor ventricular function.

Dr. Arthur L. Roth, M.D., plaintiff's treating physician since the attack in 1979, submitted a brief report dated March 31, 1982, which included plaintiff's history and Dr. Roth's comment that plaintiff "continues on very limited activities." Dr. Roth also noted that plaintiff continues to have chest pain unrelated to exertion. His diagnosis was coronary artery disease.

A subsequent letter from Dr. Roth, dated January 28, 1983, was submitted noting that, since plaintiff stopped working, a considerable amount of emotional stress was relieved, which to some extent helped plaintiff's angina. Dr. Roth reported that plaintiff has "documented coronary disease" and still sees him regularly, that plaintiff still has chest pain unrelated to exertion, that plaintiff still takes Isordil and Inderal, as well as nitroglycerine for anginal pain. Dr. Roth concluded, "I believe that Mr. Cannon is disabled due to his coronary disease."

The ALJ, applying the standards for an initial disability determination, rather than the *Kuzmin* [1] standard applicable to cessation of benefits situations, found that plaintiff is capable of performing past relevant work as a hairdresser. The ALJ relied primarily on a "Residual Functional Capacity Assessment" of a staff physician at the Office of Disability Determination. This report was made by a *non-examining* physician who extrapolated from the treadmill test performed by Dr. Cohen, and concluded that plaintiff retains the residual functional capacity for medium work, being able to sit for six hours, lift and carry up to 25 pounds (occasionally up to 50 pounds), with no impairment in using his arms and hands for pushing, pulling or manipulations. The signature of this physician is illegible so his qualifications are unknown. The ALJ discounted Cannon's complaints of pain on the ground that they were incon-

sistent with his description of his daily activities. Beginning in January 1983, the ALJ concluded, Cannon has the residual functional capacity to perform work, except work involving prolonged walking, heavy lifting or carrying and constant bending or climbing. Cannon can perform past relevant work as a hairdresser and is not disabled.

On June 13, 1984, this Court vacated the decision of the Secretary and remanded for proceedings consistent with *Kuzmin v. Schweiker*, 714 F.2d 1233 (3d Cir.1983). In *Kuzmin*, the court held that in a termination proceeding, once a disability claimant has introduced evidence that his or her condition remains essentially the same as it was at the time of the earlier determination, claimant is entitled to the benefit of the presumption that his or her condition remains disabling. *Id.* at 1237. The court noted that a claimant's burden is often eased by the fact that he or she remain under medical care, so obtaining medical evidence of continuing disability is not difficult. *Id.* In addition, the court noted that, in some cases, the medical evidence previously submitted would suffice to meet the burden if supplemented by the claimant's own testimony as to the continuing conditions. *Id.* Once the burden of going forward has shifted to the Secretary, the Secretary must produce evidence that claimant's condition has improved sufficiently to allow him or her to work. *Id.*

Since the ALJ did not give Cannon the benefit of the presumption that his condition remains disabling, this Court remanded for proceedings consistent with the standards set forth in *Kuzmin.*

On remand, nothing happened. Claimant made numerous fruitless efforts to elicit action from the SSA. On October 17, 1984, Cannon moved for an order from this Court to require the Secretary to hold a hearing. This Court denied Cannon's motion at a hearing on December 17, 1984, but the Court undertook to get the Assistant United States Attorney to stipulate to a date

1. *Kuzmin v. Schweiker,* 714 F.2d 1233 (3d Cir.    1983).

after which the Secretary would agree to award benefits if no hearing had been held. The Assistant United States Attorney on the record selected the date of February 15, 1985.[2] Although this date was some eight months after this Court's remand order, this Court agreed to it but cautioned the Secretary not to create a "Kafkaesque labyrinth" for claimant.

According to an affidavit submitted by Cannon's attorney, the hearing was scheduled for February 7, 1985, but when Cannon and his attorney arrived, the ALJ informed them that he did not have the administrative file, that he had no information on the *Kuzmin* decision, and that a physician scheduled to come to the hearing was unable to make it. Therefore, the ALJ adjourned the hearing.

When the hearing was finally held on March 6, 1985, the ALJ had before him the medical evidence submitted for the earlier hearing on July 15, 1983, including Dr. Roth's reports that Cannon is disabled. This time, however, the ALJ had new medical reports. At the request of the Division of Disability Determinations, another consultative examination was performed by Dr. Cohen on November 16, 1984. He reported that despite Cannon's compliance with a comprehensive program of medical therapy, his response was not impressive. Dr. Cohen further noted that Cannon's disease may have progressed to the point where medical therapy was inadequate, and bypass surgery might be necessary. Dr. Cohen could foresee no improvement that would allow Cannon to return to work and concluded that he is totally disabled.

At the request of his counsel, Cannon was examined by Dr. Sidney Friedman on April 6, 1984. Dr. Friedman reported on the results of an ECG, X-rays, pulmonary function testing and other tests. He concluded that Cannon is 100% disabled due to arteriosclerotic heart disease and unstable angina.

On September 29, 1984, Dr. Aaron Feingold reported that claimant had been under his care since January 1979 for coronary artery disease, documented by an angiography in March 1979. In December 1982, claimant had a positive stress test, and he developed signs of heart failure during the test. During a November 15, 1984 examination, claimant complained of chest pain on exertion and at rest. Even minimal exercise provoked chest discomfort. Due to increased angina, Dr. Feingold recommended another cardiac catheterization. He believed claimant may have had an increase in his coronary artery disease and possible triple vessel disease. If this were the case, Cannon would be a candidate for coronary bypass surgery.

At the March 6, 1985 ALJ's hearing, Dr. Donald Peyser, a board-certified internist, appeared as a medical advisor. Having reviewed the evidence and listened to Cannon's testimony, Dr. Peyser testified that Cannon has arteriosclerotic heart disease documented by cardiac catheterization in 1979. His testimony that his condition had not improved, Dr. Peyser continued, was corroborated by the reports of Dr. Roth and Dr. Feingold. On the basis of test data in the records, Dr. Peyser concluded that Cannon's impairment is of sufficient severity to meet the criteria of the Listing of Impairments under the category of cardiovascular system. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 4.04(B)(7)(a).[3]

---

**2.** In *Day v. Heckler,* 467 U.S. 104, 104 S.Ct. 2249, 81 L.Ed.2d 88 (1984), the Court rejected the imposition by the district court of a deadline for agency adjudication of a disputed disability claim. *Id.* 104 S.Ct. at 2258. The Court reasoned that in the absence of any deadline imposed by Congress, such a deadline amounted to an unwarranted judicial intrusion into a pervasively regulated area. *Id.* However, nothing in *Day* precludes the government from consenting to a deadline.

**3.** The purpose of the Listing of Impairments is defined as follows:

> The Listing of Impairments describes, for each of the major body systems, impairments which are considered severe enough to prevent a person from doing any gainful activity. Most of the listed impairments are permanent or expected to result in death, or a specific statement of duration is made. For all others, the evidence must show that the impairment has lasted or is expected to last for a continuous period of at least 12 months.

This is a case of unanimity among the medical reports. In his opinion of March 13, 1985, the ALJ held that there had been no improvement to Cannon's condition since 1979. "To the contrary, both treating and consultative examiners have indicated that his disease may have grown worse over time." The ALJ .found that Cannon has severe arteriosclerotic heart disease, meeting the requirements of the Listing of Impairments, and that he is disabled.

The ALJ's decision was forwarded to the Appeals Council whereupon, once again, the months went by with no action. Cannon's attorney made repeated attempts to stimulate some action but was told that none was possible until new regulations were promulgated by the Secretary. Cannon's counsel therefore filed the present motion in this Court on November 21, 1985. Subsequently, counsel informed this Court that the Appeals Council had remanded the case without affirming or reversing the ALJ. The government takes the position that § 2(a) of the Social Security Disability Benefits Reform Act of 1984, Pub.L. No. 98–460, 98 Stat. 1794, 1794–99 (1984), established a statutory medical improvement standard [4] that supersedes the standard in *Kuzmin*. The Act required the Secretary to make regulations implementing the new standard. These have not yet appeared, although the Reform Act became effective on October 9, 1984, and the Reform Act prescribed that the regulations would be completed "not later than 180 days after the date of the enactment of this Act." Pub.L. No. 98–460, 98 Stat. 1794, 1799, § 2(g). When regulations are promulgated, the government contends, Cannon must refile for consideration by the SSA and begin administrative proceedings anew.

It is not clear the government is correct in its position that the Reform Act applies to this case. By their own terms, the amendments apply to "determinations with respect to which a timely request for judicial review is or has been made by an individual litigant of a final decision of the Secretary made within 60 days prior to the date of the enactment of this Act [Oct. 9, 1984]." Pub.L. No. 98–460, 98 Stat. 1794, 1797, § 2(d)(2)(D). In the present case, the litigant was on remand after a request for judicial review made nearly a year before the enactment of the Act.

Even if the Reform Act applies to this case, it is unclear why the Appeals Council needed to await regulations on the medical improvement standard given the ALJ's finding that Cannon's disability was of a severity sufficient to meet the standards of the Listing of Impairments. No matter what regulations the Secretary ultimately implements, the outcome of this case will be the same.

The net effect of the Secretary's handling of this case is that Mr. Cannon is somewhere behind where he was three years ago. Cannon will not even be able to reapply for benefits until the Secretary promulgates new regulations on medical improvement. In its brief, the government undertakes to reassure this Court of the normalcy of the treatment Cannon has received by representing that "hundreds" of other claimants are in the same circumstances Cannon is in.

### DISCUSSION

■ The events of this case subsequent to this Court's order of June 13, 1984 have been recited merely to illustrate the callousness to which the Secretary occasionally descends in treating disability claimants. Those events are not before this Court because there has been no "final decision of the Secretary" which is a prerequisite to the subject matter jurisdiction of this court. 42 U.S.C. § 405(g) (1985). This Court nevertheless has inherent power over its own orders and may modify or set them aside pursuant to Fed.R.Civ.P. 60.

■ Upon reviewing the record, this Court is convinced that Cannon's case

20 C.F.R. § 404.1525(a) (1985).

4. Pub.L. No. 98–460, 98 Stat. 1794, 1794 § 2(a), 42 U.S.C. § 423(f)(1) (1985).

should have been reversed rather than remanded on June 13, 1984. Nothing in *Kuzmin* precluded a reversal and award of benefits so long as there was no substantial evidence supporting the Secretary's decision under the correct legal standard. In *Kuzmin* itself, the Third Circuit Court of Appeals reversed and awarded benefits. 714 F.2d at 1240.

 The ALJ's August 26, 1983 decision conflicted with the opinion of Cannon's treating physician, Dr. Roth, who considered Cannon disabled. The ALJ's decision also took no account either of Cannon's testimony or Dr. Cohen's report of a positive response on the treadmill test with signs of left ventricular failure and poor ventricular function. Supporting the ALJ's finding, there was only the "Residual Functional Capacity Assessment" form filled out by a non-examining physician employed by the state agency. It is clear now, as it was in 1983, that such evidence is not substantial evidence. *Green v. Schweiker*, 749 F.2d 1066, 1071 n. 3 (3d Cir.1984) ("[s]tanding alone … a physical capacities evaluation form is not substantial evidence"); *O'Leary v. Schweiker*, 710 F.2d 1334, 1341 (8th Cir.1983); *McCoy v. Schweiker*, 683 F.2d 1138, 1147 n. 8 (8th Cir.1982) (en banc). Since the signature is illegible and the name and qualifications of the physician unknown, the form should have been given *no* weight. *Bryant v. Schweiker*, 537 F.Supp. 1, (E.D.Pa.1982).

Thus, if the ALJ had applied the correct standard, his conclusion would still have been unsupported by substantial evidence, indeed by any evidence at all.

 A decision to direct the award of benefits should be made only when the administrative record "of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny v. Harris*, 745 F.2d 210, 221–22 (3d Cir.1984); *Tennant v.*

*Schweiker*, 682 F.2d 707, 710 (8th Cir.1982). We believe the administrative record was fully developed and set forth substantial evidence that Cannon was disabled. Therefore, this Court should have reversed.[5] Claimant's motion will be treated as a motion for relief from judgment or order pursuant to Fed.R.Civ.P. 60(b)(5). This Court's order of June 13, 1984 is vacated. We reverse and remand to the Secretary for reinstatement of benefits pursuant to this Court's order of December 20, 1985 filed separately. As claimant is now a prevailing party, and as this Court finds no substantial justification for the government's position in this case, claimant is entitled to an award of attorney's fees, under 28 U.S.C. § 2412 (1985), as provided in the order filed separately.

---

**5.** SSA data shows that in 1983, 29.4% of final district court decisions on disability claims were reversals without remand of the Secretary's determinations. *Podedworny*, 745 F.2d at 222 n.

11 (citing *Tustin v. Heckler*, 591 F.Supp. 1049, 1059 (D.N.J.1984), *vacated in part and remanded*, 749 F.2d 1055 (3d Cir.1984)).