Elsie BRYANT, Plaintiff,

v.

Hon. Otis R. BOWEN, Secretary of Health and Human Services, Defendant.

Civ. A. No. 85–5583.

United States District Court,
D. New Jersey.

March 3, 1988.

Freeman & Bass, P.A. by Joel M. Solow, Newark, N.J., for plaintiff.

Samuel A. Alito, U.S. Atty. by Christine Piatek, Sp. Asst. U.S. Atty., Newark, N.J., for defendant.

## OPINION

BISSELL, District Judge.

This action is brought under § 205(g) of the Social Security Act (the "Act"), as amended, 42 U.S.C. § 405(g), for review of the final decision of the Secretary of Health and Human Services ("Secretary") denying plaintiff's claims for Supplemental Security Income ("SSI") and Disabled Widows' insurance benefits ("DWB").

## FACTS AND PROCEDURAL BACKGROUND

Plaintiff, Elsie Bryant, was born on August 4, 1935. At the time of the administrative hearing she was 50 years old. She had a tenth-grade education, and had not been employed since 1955. At the time of the hearing her height was 5 ft. 6 in. and her weight was between 290 and 300 pounds.

Plaintiff's husband, Carnelius Bryant, died fully insured in 1981, and plaintiff had not remarried at the time of the hearing.

Plaintiff initially filed an application for SSI benefits in April of 1983, alleging disability due to back pain, high blood pressure, swollen feet and shortness of breath. The application was denied initially on June 28, 1983. Plaintiff's request for reconsideration on September 27, 1983 was apparently denied as well, although this denial is not shown in the record, because plaintiff filed a second initial application on July 10, 1984, which was also denied, and a third on January 8, 1985. The third application was denied initially on March 13, 1985, and upon reconsideration on April 17, 1985. On May 14, 1985, plaintiff, approaching the statutory minimum age of 50 years, filed an application for Disabled Widows benefits for the first time, and also requested a hearing before an Administrative Law Judge ("ALJ") for consideration of both the new DWB claim and the existing SSI claim.

The ALJ held a hearing on August 12, 1985, at which plaintiff testified with counsel. On August 29, 1985 the ALJ concluded, in separate decisions, that plaintiff was not entitled to benefits under either SSI or DWB. Plaintiff requested review by the Appeals Council of both decisions, and the requests were denied on October 31, 1985. This denial had the effect of making the ALJ's decision on each claim the final decision of the Secretary.

*Scope of Review*

The conclusions of the ALJ, which represent the final findings of fact by the Secretary, must be upheld by the reviewing court if they are supported by "substantial evidence." 42 U.S.C. §§ 405(g) and 1383(c)(3). "Substantial evidence" has been defined to mean "such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). "However, 'even if the Secretary's factual findings are supported by substantial evidence [a] court may review whether the administrative determination was made upon correct legal standards.'" *Friedberg v. Schweiker*, 721 F.2d 445, 447 (3d Cir.1983) (reprinting district

court opinion) (*quoting Curtin v. Harris,* 508 F.Supp. 791, 793 (D.N.J.1981)).

### Applicable Standards

In order to find a claimant eligible for benefits under SSI or DWB, the ALJ must determine, *inter alia,* that the claimant was "disabled" at the time under consideration. The definition of "disabled," however, as well as the method by which disability is determined, is not the same for purposes of SSI eligibility as it is for DWB eligibility.

Under SSI, disability is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). Pursuant to the Act, regulations have been established providing a five-step inquiry for evaluating disability. 20 C.F.R. § 404.1520(a). In addition, a claimant's impairment must meet the twelve-month duration requirement before being found disabling.

The five-step inquiry proceeds as follows: [1]

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. § 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. § 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which meets or equals a listed impairment in Appendix 1 of Subpart P of Regulation No. 4, a finding of "disabled" will be made

without consideration of vocational factors (20 C.F.R. § 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. § 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. § 404.1520(f)).

For SSI analysis, in determining whether a claimant has the residual functional capacity to engage in any substantial gainful activity, the ALJ must consider the combined effects of the claimant's exertional and non-exertional impairments. *Burnam v. Schweiker,* 682 F.2d 456, 457 (3d Cir. 1982). Additionally, it is well settled that pain itself may be disabling. *E.g., Smith v. Schweiker,* 671 F.2d 789, 793 (3d Cir. 1982).

For a widow to be eligible under DWB, the definition of disability is more stringent. To be "disabled," a widow must be incapable of performing *any* gainful employment. 42 U.S.C. § 423(d)(2)(B). The inability must be based solely upon physical or mental impairment, 20 C.F.R. § 404.1577, unlike the SSI "disability," which may be found in the context of the claimant's age, education and vocational background. *See* 20 C.F.R. § 404.1520(e), (f). A widow's disability must either be one of those impairments set forth in the Listing of Impairments, 20 C.F.R. Part 404, Subpt. P, App. 1, or it must be the medical equivalent of a listed impairment. 20 C.F.R. § 404.1578(a)(1). *See also* 20 C.F.R. § 404.1525(a). While the SSI analysis also includes the reference to the Listing of

---

**1.** It should be remembered that the inquiry is undertaken sequentially, much in the manner of a "flow chart." For each of the first four levels, the ALJ's finding must be either "yes" or "no"; one response dictates a finding of "disabled" or "not disabled" and ends the inquiry, and the other response causes the inquiry to proceed to

the next level. If the fifth and final level is reached, indicating that a conclusive finding has not been made, the ALJ must plug very specific claimant characteristics into a pre-set "grid" which mechanically yields a finding of "disabled" or "not disabled." *See* 20 C.F.R. Part 404, Subpt. P, App. 2, § 200.00 *et seq.*

Impairments, 20 C.F.R. § 404.1520(d), the reference is but one of several steps in the SSI analysis, but for DWB purposes, the inference is essentially the consideration upon which the application will succeed or fail.

## DISCUSSION

### 1. The Disabled Widows' Claim

■ The Court will first address the ALJ's denial of plaintiff's DWB claim. Plaintiff alleged disability due to impairment meeting or equalling the requirements of § 10.10 of Subpart P, Appendix 1 of Regulation No. 4: specifically, obesity combined with hypertension, angina and osteoporosis.

It is undisputed that at the time of the hearing, as well as at the time of any physical examination on the record, plaintiff's weight exceeded the level required for a finding of obesity. In addition to the weight requirement, however, plaintiff must show one of the following:

A. History of pain and limitation of motion in any weight-bearing joint or spine (on physical examination) associated with x-ray evidence of arthritis in a weight-bearing joint or spine; or

B. Hypertension with diastolic blood pressure persistently in excess of 100 mm. Hg measured with appropriate size cuff; or

C. History of congestive heart failure manifested by past evidence of vascular congestion such as hepatonegaly, peripheral or pulmonary edema; or

D. Chronic venous insufficiency with superficial varicosities in a lower extremity with pain on weight bearing and persistent edema; or

E. Respiratory disease with total forced vital capacity equal to or less than 2.0L. or a level of hypoxemia at rest equal to or less than the values specified in [tables at Section 10.10].

20 C.F.R. Part 404, Subpt. P, App. 1, § 10.10 A *et seq.*

The ALJ concluded that none of the additional standards set forth in the section had been met. This Court finds that this conclusion is supported by substantial evidence.

Section 10.10 A requires that a "history of pain and limitation of motion" be established. Notwithstanding plaintiff's complaints of pain to several of the Social Security Administration's ("SSA's") consultant physicians, the record indicates that plaintiff has not discussed her problems during any other examinations. Further, the ALJ relied upon SSA consultants' findings of neither significant limitations on motion in the lower extremities nor localized pain on physical examination.

The ALJ determined that plaintiff's alleged hypertension did not satisfy the requirement of § 10.10 B, and this determination is supported by readings of plaintiff's blood pressure consistently below the 100 mm. Hg level.

The ALJ's conclusion that plaintiff's condition failed to meet those listed in §§ 10.10 C, 10.10 D and 10.10 E are also supported by substantial evidence, as demonstrated by the several physical and laboratory examinations undertaken between April 1983 and February 1985. In sum, the ALJ was supported by substantial evidence in findings that plaintiff's symptoms did not meet the standards of § 10.10.

The ALJ found, in addition, that plaintiff's testimony alleging constant lower back pain was not credible. Tr. 17. This finding appears to be based upon the lack of corroborative medical evidence,[2] and the

---

2. Plaintiff would have the Court believe that the ALJ minimized the pain complaints because of the absence of leg swelling at most of the examinations. Plaintiff's Memorandum at 13. The ALJ attempted no such correlation, stating that the frequent absence of swelling indicated that "this *plaint* is obviously overstated." Tr. 17, 25 (emphasis added). Plaintiff misreads this con-

clusion, and misquotes the ALJ: "'this *pain* is obviously overstated.'" This is not the only instance in which the record was misquoted in support of plaintiff's case. *See* Plaintiff's Memorandum at 8; Tr. 200 (Dr. DeGuzman found that plaintiff was capable of "light or sedentary work," rather than "at best sedentary work" as quoted by plaintiff); Tr. 26 (The ALJ found that

absence in the record of any reference by plaintiff to back pain when she was hospitalized for other physical complaints. This Court is not unmindful that a patient fearing a heart attack may not be as conscious of back pain, and that a hospital record of a patient complaining of chest pains may not reflect complete discussion of less pressing medical problems. This Court also recognizes the well-settled proposition that pain itself may be disabling, *e.g., Smith v. Schweiker,* 671 F.2d 789, 793 (3d Cir.1982). "[E]ven pain unaccompanied by objectively observable symptoms which is nevertheless real to the sufferer and is so intense as to be disabling will support a claim for disability benefits." *Taybron v. Harris,* 667 F.2d 412, 415 (3d Cir.1981). A review of plaintiff's medical history, however, indicates that plaintiff's back pain in itself has not limited her activities, and further indicates that at no point has plaintiff sought outside medical help for her back pain, nor has the pain failed to be controlled by relatively mild treatment. Plaintiff's complaint of pain, in itself, then, does not rise to the level of disability under the *Taybron* standard.

Since the ALJ's conclusions in denying plaintiff's claim for Disabled Widows' Benefits are supported by substantial evidence, the denial of that claim is affirmed by this Court.

## 2. The Supplemental Security Income Claim

■ In determining whether plaintiff was eligible for SSI benefits, the ALJ properly applied the five-step analysis set forth at 20 C.F.R. § 404.1520(a) *et seq.*

It is undisputed that plaintiff was not engaging in "substantial gainful activity" at the time of the hearing, and the ALJ found that plaintiff's obesity was a "severe impairment." [3] These findings allow the inquiry to proceed to the third step, under which a finding of disability would automatically entitle plaintiff to SSI benefits. As discussed at length in the analysis of

plaintiff's DWB claim, however, plaintiff has failed to establish either a "listed impairment" or the equivalent to such an impairment. *See* 20 C.F.R. §§ 416.925, 926. Since the fourth step involves plaintiff's ability to do work performed in the past, it cannot be applied to this case, because plaintiff has not engaged in substantial gainful employment since 1955.

Because the first four steps of the § 404.1520 inquiry do not yield a conclusive determination of disability, the ALJ properly proceeded to the fifth and final step, the so-called "grids" established under § 404.1520(f). The ALJ is required to determine plaintiff's "residual functional capacity" which once determined will direct the ALJ to a determination of disability or no disability using plaintiff's age, education and experience.

The ALJ determined that plaintiff was capable of performing "light" or "sedentary" work. This determination concludes that plaintiff is capable of lifting no more than 20 pounds at a time, or frequently lifting and carrying objects weighing no more than 10 pounds. Also, "light" work can involve standing or walking a "good deal" of the time, 20 C.F.R. § 404.1567(b), or sitting most of the time with some pushing and pulling of arm and leg controls.

The ALJ's conclusion as to plaintiff's residual functional capacity is supported by substantial evidence the SSA's medical consultants did not report that plaintiff had any physical limitations. Additionally, Dr. DeGuzman's diagnosis, contrary to plaintiff's contention,[4] was that plaintiff was capable of "light" or "sedentary" work. Tr. 200.

Therefore, the ALJ's use of the "light work grid," 20 C.F.R. Pt. 404, Subpt. P, App. 2, Table No. 2, Rule 202.10, is supported by substantial evidence, and this Court finds that the ALJ's conclusion that plaintiff is not disabled was correct. The

plaintiff's obesity was a severe impairment, rather than finding that plaintiff had "no severe impairment.").

**3.** *See supra* n. 2.

**4.** *See supra* n. 2.

ALJ's denial of SSI benefits is therefore affirmed.

### 3. Collateral Claims

█ Plaintiff's memorandum raises a claim that the ALJ erred in failing to allow cross-examination of two physicians who examined plaintiff. Dr. Doctry, plaintiff urges, should have been made available for cross-examination as to the extent and presence of impairments. Dr. Sinady, according to plaintiff, should have been made available for cross-examination on the issue of possible conflict of interest, because Dr. Sinady's wife is allegedly employed in some capacity by the agency.

A claimant in a disability hearing is not entitled to unlimited cross-examination, but rather "such cross-examination as may be required for a full and true disclosure of the facts." 5 U.S.C. § 556(d); *see Solis v. Schweiker,* 719 F.2d 301, 302 (9th Cir.1983). This Court finds that the ALJ did not abuse his discretion in determining that cross-examination was not required. Dr. Doctry's report was sufficiently detailed regarding the extent of plaintiff's condition as to support the ALJ's conclusion that a full and true disclosure of the facts had been made. Dr. Sinady's report is primarily quantitative in nature, and the only comment not specifically supported by the reported data was to the effect that plaintiff's weight should be reduced. There is no basis for an inference of bias in this report. *Cf. Solis,* 719 F.2d at 302.

Plaintiff also claims that the ALJ erred in denying plaintiff's request for psychological examination. Plaintiff alleges that she "may fall within the parameters of Section 12.05 of the Listing of Impairments ["Mental Retardation and Autism"]." Plaintiff's Memorandum at 15. This Court finds no merit in plaintiff's claim. The regulations call for additional examinations at the Secretary's expense only when there is insufficient evidence in the record for the Secretary to make a determination about plaintiff's impairments. *See* 20 C.F.R. § 404.1517(b). As the ALJ noted, Tr. 27, the record contains no indication of mental deficiency of any kind. This Court finds

that the ALJ's denial of plaintiff's request for psychological testing at the Secretary's expense was supported by substantial evidence.

For the foregoing reasons, this Court concludes that the ALJ's decision denying plaintiff disability benefits is supported by substantial evidence. Accordingly, the Secretary's decision is affirmed.