**Martha ALEXANDER, Plaintiff,**

v.

**Hon. Donna E. SHALALA, Secretary of Health and Human Services, Defendant.**

**Civil Action No. 93–4393 (MTB).**

United States District Court,
D. New Jersey.

July 31, 1995.

Abromson & Carey by Glenn B. Carey, Newark, New Jersey, for Plaintiff.

United States Attorney's Office by Peter G. O'Malley, Assistant U.S. Attorney, Newark, New Jersey, for Defendant.

## *OPINION*

BARRY, District Judge.

### I. *INTRODUCTION*

Plaintiff Martha Alexander brings this action pursuant to § 205(g) and § 1631(c)(3) of the Social Security Act, as amended, 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3) (the "Act"), to review a final determination of the Secretary of Health and Human Services (the "Secretary") denying her application for disability insurance benefits and supplemental security income ("SSI") disability payments. Plaintiff requests that the decision of

the Secretary be reversed, or, in the alternative, that this action be remanded to the Secretary for reconsideration.

## II. *FACTS*

### A. *Background*

Plaintiff was born on July 18, 1942 (Tr. at 2)[1] and was fifty years old at the time of the hearing before the ALJ on January 15, 1993. *Id.*, at 1. Plaintiff has a high school education. *Id.*, at 2. Plaintiff's first employment, which lasted from 1976 until 1978, was at a day care center in Boston, Massachusetts. *Id.*, at 7. This position required plaintiff to spend the majority of her day sitting, while occasionally assisting children on casual walks. *Id.* For the next two years, plaintiff was employed as a part-time home health aide. *Id.*, at 5. Plaintiff's duties entailed providing care for patients in their homes, carrying cleaning supplies, and occasionally "turning over" bed-ridden patients. *Id.*, at 5–6. From 1980 to 1983, plaintiff was employed as a cashier at a fast-food restaurant, where she was required to stand for six-hour shifts and carry or lift objects weighing up to ten pounds. *Id.*, at 9–10. Over the next five years, plaintiff assisted at her husband's hardware store, performing both manual and menial tasks.[2] *Id.*, at 4–5. Plaintiff's most recent employment dates back to 1990 at which time she worked as a retail sales clerk at Jordan Marsh in Boston. *Id.*, at 3. While so employed, plaintiff was required to lift or carry objects weighing from twenty-five to thirty pounds, and she spent approximately seven hours per day on her feet. *Id.*

On May 20, 1990, plaintiff injured her lower back in a fall at a Boston bank. She terminated her employment with Jordan Marsh approximately two weeks later. *Id.*, at 11. Shortly thereafter, she moved to New Jersey. *Id.*, at 12.

Plaintiff filed applications for SSI disability payments and for disability insurance benefits on January 27, 1992 and February 5, 1992, respectively. (Rec. at 62–68). Plaintiff alleged that, as a result of persistent lower back pain, she had been disabled within the meaning of the Act since May 21, 1990. (Op. at 1). The claims were denied initially on March 30, 1992 and upon reconsideration on August 7, 1992. (Rec. at 69–76; 77–93). Pursuant to plaintiff's timely request, (Rec. at 94–95), a hearing was held before Administrative Law Judge Irving Fliegler on January 15, 1993. (Tr. at 1). By decision dated February 3, 1993, the ALJ found that plaintiff met the disability insured status requirements of the Act from May 21, 1990 through December 31, 1991, but not thereafter. (Op. at 5). However, the ALJ held that plaintiff was not under a disability within the meaning of the Act at any date through the date of the hearing. *Id.* Accordingly, he denied plaintiff's request for disability insurance benefits and SSI disability payments. *Id.*, at 6.

By letter dated July 30, 1993, the Appeals Council denied plaintiff's request for reconsideration, concluding that there was no basis for granting her request for review. (Rec. at 2). Plaintiff then timely filed this action on October 1, 1993 seeking reversal of the Secretary's decision, or, in the alternative, a remand of this action to the Secretary for reconsideration.

### B. *Medical History*

Plaintiff claims that she has been disabled as a result of lower back pain since May 21, 1990 and is thus entitled to disability benefits from that date. *Plaintiff's Brief*, at 1. Plaintiff was first treated for her injury on May 24, 1990 at the New England Medical Center. (Op. at 2). Emergency room records indicate that she suffered from bilateral knee pain with bruising and swelling to both

---

1. "Tr." refers to the transcript of the testimony of plaintiff and of vocational expert Benjamin Leibowitz before Irving Fliegler, ALJ, on January 15, 1993. This transcript may be found on pages 24 through 61 of the record (hereinafter "Rec."). "Op." refers to the Opinion of the ALJ which may be found at pages 9 through 14 of the record.

2. Plaintiff's work at the hardware store—which consisted of tending to customers' needs, operating the cash register and monitoring billing accounts—typically required her to remain standing for eight to nine hours. She also stocked shelves which required her to lift objects weighing up to ten pounds on a regular basis. *Id.*, at 4–5.

knees. *Stipulated Medical Abstracts,* at 2. An examination of the lumbar spine revealed the absence of any bone or soft tissue abnormalities. *Id.* The attending physician diagnosed plaintiff's condition as a lower back strain and recommended that she remain out of work for five days. (Rec. at 121).

Since the May 20, 1990 accident, plaintiff has been under the care of Dr. Alfano, a chiropractor. (Op. at 10). Dr. Alfano's report from his initial examination of plaintiff on June 20, 1990, described an over-developed female adult with an irregular gait and antalgic posture. *Stipulated Medical Abstracts,* at 3. Dr. Alfano also noted that plaintiff experienced great difficulty when moving about. *Id.* A physical examination revealed muscle spasms in the lower back which extended into the lower legs as well as tenderness in the lumbo sacral area, the Gludius Maximus and the calves. *Id.* In addition, an orthopedic examination produced positive results for the following tests performed on that day: Double Leg Raise, Straight Leg Raise, and Gaensien's Heel to Buttocks. *Id.* Finally, a neurological examination revealed L1–S1 hypersensitivity. *Id.*

Upon reexamination on January 16, 1992, Dr. Alfano reported an improvement in plaintiff's posture and gait, although he noted that plaintiff continued to move with some difficulty, experiencing slight spasms in the lower back. *Id.* The doctor also reported that plaintiff complained of lower back pain and was experiencing problems with her left leg. *Id.* The Double Leg Raise test continued to produce positive results. *Id.*

In treating plaintiff's condition, Dr. Alfano reported that he performed manipulative corrections (adjustments) of interosseous disrelationships with general spinal mobilization maneuvers. *Id.,* at 4. Further, Dr. Alfano applied ice and galvanic therapy at the beginning of plaintiff's treatment, while later adding heat packs and performing both galvanic and ultrasound therapy. *Id.* In addition to recommending warm baths and light exercise, Dr. Alfano also instructed plaintiff to use a twenty minutes on—twenty minutes off ice treatment while at home. *Id.*

Based on the "considerable relief" of plaintiff's symptomatic state, Dr. Alfano articulated a prognosis of "fair". *Id.* He recommended periodic, comparative examinations and x-rays "to determine the actual degree of post traumatic pathology and disability, if any." (Rec. at 134). Dr. Alfano noted that plaintiff continued to experience episodes of discomfort and pain, and opined that plaintiff's condition was most likely permanent. *Id.*

On March 6, 1992, plaintiff was examined at the offices of the Newark Diagnostic Radiologists. (Rec. at 135). A lumbosacral spine examination revealed "mild sclerotic deformity of the lumbar spine", and further revealed that the vertebral body demonstrated normal height, that the intervertebral disc spaces were well maintained and that the pedicles were intact. *Id.* The diagnosis was of "mild scoliosis" and the exam was "otherwise unremarkable". *Id.*

On March 10, 1992, Dr. Ronald Forster of the State of New Jersey Department of Labor, Division of Disability Determinations, examined plaintiff. *Stipulated Medical Abstracts,* at 1–2. Dr. Forster noted that plaintiff was experiencing lower back pain with radiation extending to the right knee. *Id.,* at 1. He also indicated that plaintiff was under the care of Dr. Alfano but had never sought treatment from any orthopedist or neurosurgeon. *Id.* In addition, Dr. Forster reported that plaintiff had been told that she suffered from "sciatica". *Id.* Dr. Forster noted that plaintiff took no medication and had regularly refused biweekly physical therapy at Dr. Alfano's office. *Id.*

Dr. Forster's examination of plaintiff's lumbosacral spine revealed no scoliosis or lumbar muscle spasm. *Id.* In addition, Dr. Forster's examination disclosed a normal cervical lordosis, normal dorsal kyphosis, and normal lumbar lordosis. *Id.* He did detect some tenderness in the area of the lumbosacral joint. *Id.* Dr. Forster also reported no muscle or sensory loss about the lower extremities, noting that plaintiff walked with a normal gait but experienced lower back pain when squatting. *Id.,* at 2. Dr. Forster diagnosed plaintiff's condition as "[p]robably a very mild chronic lumbosacral sprain." *Id.,* at 2.

## C. *Testimony of Witnesses*

### 1. **Plaintiff's Testimony**

Plaintiff testified as to the details of her medical and employment history at the hearing before the ALJ on January 15, 1993. She testified that she tripped over a rope in a Massachusetts bank on May 20, 1990. (Tr. at 10). A few days later, she sought treatment at the New England Medical Center where she was informed that she had suffered a lower back strain. *Id.* She also explained that she had attempted to return to work but had quit her job after two weeks because of pain that required her to sit down after prolonged periods of standing. *Id.*, at 12.

Plaintiff testified that she suffers constant pain that has remained essentially unchanged since the date of her fall. *Id.*, at 13–15. She indicated that this pain bothers her when she walks, stands, sits or lifts anything that weighs more than five pounds. *Id.*, at 15–17. She also explained that she does no housework, very rarely cooks for herself and avoids climbing the stairs in her house when possible. *Id.*, at 23–29. She further stated that she attempts to minimize the pain with rest and that she takes Tylenol or uses heating pads to relieve the pain. *Id.*, at 18. Nonetheless, plaintiff admitted that her chiropractor, Dr. Alfano, has never prescribed any pain medication for her condition. *Id.* She testified that she receives treatment from Dr. Alfano at least twice a month, *id.*, at 20, but claims that none of this treatment has ever provided her any real relief from the pain. *Id.*, at 35.

### 2. **Testimony of the Vocational Expert**

Benjamin Leibowitz, a counseling psychologist employed by the Social Security Administration, testified as the vocational expert ("VE") before the ALJ. (Tr. at 36–38). Based upon his review of a vocational report completed by plaintiff (Rec. at 99–104), the VE characterized plaintiff's past employment in retail stores, in a fast food restaurant, and in her husband's hardware store as "semi-skilled". (Tr. at 36). In terms of exertional demands, Mr. Leibowitz testified that plaintiff's work in the department store was of medium exertional level while plaintiff's other employment had involved only light exertional demands. (Tr. at 37). The VE further opined that cashier's jobs in the national economy are generally light in terms of their exertional requirements. *Id.* Finally, the VE stated that the work skills acquired through employment as a cashier are not transferable to other jobs, as they are indigenous to cashiering. (Tr. at 37–38).

## III. *DISCUSSION*

### A. *Standard of Review*

■ Under 42 U.S.C. § 405(g), a claimant is entitled to judicial review of a final determination made by the Secretary following an administrative hearing. The district court is bound by the Secretary's findings of fact if those findings are supported by "substantial evidence" from the record as viewed in its entirety. 42 U.S.C. § 405(g); 1383(c)(3); *Early v. Heckler*, 743 F.2d 1002, 1007 (3d Cir.1984). The Supreme Court has defined "substantial evidence" to be "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)); *Lewis v. Califano*, 616 F.2d 73, 76 (3d Cir.1980). However, substantial evidence "does not mean a large or considerable amount of evidence ...". *Pierce v. Underwood*, 487 U.S. 552, 565, 108 S.Ct. 2541, 2550, 101 L.Ed.2d 490 (1988). "Substantial evidence" is "more than a mere scintilla, but may be less than a preponderance". *Woody v. Secretary of HHS*, 859 F.2d 1156, 1159 (3d Cir.1988).

■ Further, where evidence in the record is susceptible to more than one rational interpretation, the court must endorse the Secretary's conclusion. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir.1982). The court must accept the Secretary's findings if supported by substantial evidence, and is, therefore, not empowered to conduct a *de novo* review. *See Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir.1981). The court, however, still "retains a responsibility to scrutinize the entire record and to reverse or remand if the

Secretary's decision is not supported by substantial evidence." *Smith v. Califano,* 637 F.2d 968, 970 (3d Cir.1981). The ALJ is duty-bound to analyze all the relevant evidence in the record and must provide adequate explanations for disregarding or rejecting any portion of the record. *Brewster v. Heckler,* 786 F.2d 581, 584–585 (3d Cir.1986); *Cotter,* 642 F.2d at 704–707; *Dobrowolsky v. Califano,* 606 F.2d 403, 407 (3d Cir.1979).

### B. *Statutory Framework for Entitlement to Disability Benefits*

 To qualify for disability benefits under the Social Security Act, a claimant's disability must commence at a time when he or she meets the insured status requirements for entitlement to such benefits. *Kane v. Heckler,* 776 F.2d 1130, 1131, n. 1 (3d Cir. 1985).[3] The claimant must then establish a medically determinable physical or mental impairment which prevents the claimant from engaging in any substantial gainful activity. This impairment must be of the sort that can be expected to result in death or last for a statutory period of at least twelve months. 42 U.S.C. § 416(i); § 423(d)(1)(A). In addition, the Act provides that an individual "shall be determined to be under a disability only if his physical or mental impairment ... is of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

 The following five-prong test, as set forth in the relevant guidelines, is employed to determine whether a claimant is disabled and thus eligible to receive disability benefits:[4]

(1) An individual who is working and engaging in substantial gainful employment will not be found to be disabled regardless of medical findings (20 C.F.R. § 404.1520(b));

(2) An individual who does not have a "severe impairment" will not be found to be disabled (20 C.F.R. § 404.1520(c));

(3) If an individual is not working and is suffering from a severe impairment which meets or equals a listed impairment in Appendix 1 of Subpart P, a finding of disabled will be made without consideration of vocational factors (20 C.F.R. § 404.1520(d));

(4) If an individual is capable of performing work he or she has done in the past, a finding of not disabled must be made (20 C.F.R. § 404.1520(e));

(5) If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed. (20 C.F.R. § 404.1520(f)).

 Plaintiff bears the burden of establishing entitlement to disability benefits by producing competent evidence. *See* 42 U.S.C. § 423(d)(5)(A) ("[a]n individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Secretary may require.") However, the determination as to whether a person is disabled is for the Secretary, and the opinion of a physician on the matter is therefore not deemed dispositive. *See* 20 C.F.R. § 404.1527(e).

 In order for a person to be found disabled within the meaning of the Act, it is not sufficient that the evidence establish the mere presence of a disease or impairment. Rather, the evidence must demonstrate that the disease or impairment has caused functional limitations that prevent the claimant from engaging in any substantial gainful activity. *See Capoferri v. Harris,* 501 F.Supp.

---

**3.** Insured status requirements are not a consideration for SSI eligibility.

**4.** This analysis is done in sequence. Each prong requires an affirmative or negative response. For each of the first four prongs, a finding of "not disabled" will end the inquiry; otherwise the inquiry will proceed to the next level. At the fifth and final prong, the ALJ will apply very specific claimant characteristics to a grid which mechanically determines whether the individual is "disabled" or "not disabled." *Bryant v. Bowen,* 683 F.Supp. 95, 97, n. 1 (D.N.J.1988), citing 20 C.F.R. § 404, Subpart P, Appendix 2, § 200.00 *et seq.*

32, 36 (E.D.Pa.1980), *aff'd,* 649 F.2d 858 (3d Cir.1981).

■ Upon review of the entire record and application of the statutory standard, it is evident that there is "substantial evidence" to support the Secretary's determination. Accordingly, the Secretary's decision will be affirmed.

## C. *Review and Analysis of the ALJ's Decision*

Applying the five-step sequential analysis established in 20 C.F.R. § 404.1520 to the instant case, the ALJ first recognized that plaintiff satisfied the first prong of the test in that plaintiff had not engaged in any substantial gainful activity since June 14, 1990. (Op. at 5). The judge noted that plaintiff had met the disability insured status requirements of the Act on May 21, 1990 and continued to meet them through December 31, 1991, but not thereafter. *Id.*

In order to satisfy the second and third prongs of the test, plaintiff had the burden of demonstrating that she suffered from a "severe impairment" that related to her ongoing complaint of lower back pain. *See* 20 C.F.R. § 404.1520. After consideration of all the relevant evidence, the ALJ found that plaintiff appeared to satisfy this requirement, stating that plaintiff's impairment "may be" severe. (Op. at 4). However, this impairment was deemed to fall well short of anything listed in Appendix I of Subpart P of the regulations. (Op. at 5).

Turning to the fourth prong of the five-step inquiry, the ALJ held that plaintiff had failed to demonstrate that her impairment rendered her incapable of engaging in her previous relevant work. *Id.; see also,* 20 C.F.R. § 1404.1521. The ALJ found that the evidence failed to establish that plaintiff could not perform "light" work such as that required by her previous jobs. (Op. at 4).

In reaching this conclusion, the ALJ first addressed the medical evidence, noting that it provided "very limited objective support" for her allegations. *Id.,* at 2. The ALJ opined that the "mild" scoliosis revealed by x-rays did not reasonably explain the degree of discomfort claimed by plaintiff. *Id.,* at 2–

3. Further, the ALJ noted that the medical examination reports revealed only one instance of mild muscle spasm, no neurological abnormalities in plaintiff's lower extremities, and did not disclose any loss of motion in plaintiff's back. *Id.,* at 2. In addition, the ALJ noted that the findings of Dr. Forster in 1992, which diagnosed only a "very mild" lumbosacral sprain, were entirely consistent with the May 24, 1990 records from the New England Medical Center. *Id.,* at 3. Finally, the ALJ downplayed the chiropractor's reports inasmuch as they failed to provide any estimate of plaintiff's functional capabilities. *Id.*

The ALJ next turned to plaintiff's own testimony, and found that it was not credible, at least in terms of the degree of pain and debilitation that were described. *Id.* Plaintiff testified, the ALJ noted, that she experienced sharp pain in her lower back on a daily basis that had remained effectively unchanged since the date of her injury and that the treatments she received provided only temporary alleviation of her pain. *Id.* The ALJ considered plaintiff's contentions that she could lift no more than five pounds, that she could stand or sit for no more than thirty to thirty-five minutes, and that she did not participate in household chores. *Id.* The ALJ also considered plaintiff's claims that her time consisted primarily of reading or watching television and that she cooked only two or three times a week and went food-shopping only once or twice a month. *Id.*

The ALJ then addressed the inconsistencies that he believed existed between plaintiff's testimony and the medical evidence in the written record. *Id.* First, the ALJ noted that in comparison to plaintiff's contentions, her physician, Dr. Alfano, reported considerable success in alleviating plaintiff's lower back pain. *Id.* Second, the ALJ emphasized the inconsistency between plaintiff's claims of biweekly visits with Dr. Alfano's notation of March 12, 1992 which stated the following: "She has been recommended to come once a month, however, patient only comes when pain is symptomatic". *Id.* (Rec. at 131). Similarly, the ALJ opined that plaintiff's claims of "daily sharp pain" did not square with plaintiff's minimal use of pain medication, i.e., Tylenol. *Id.,* at 4. Third,

the ALJ remarked upon what he considered inconsistencies between plaintiff's pre-hearing interviews concerning her daily activities and her testimony at the hearing. *Id.* These supposed inconsistencies concerned plaintiff's ability to perform household chores, her activities with her grandson, and her failure to mention her need to lie down frequently. *Id.* Finally, the ALJ took note of plaintiff's allegedly poor work record prior to the May 20, 1990 accident, and questioned plaintiff's motivation to gain employment. *Id.*

In sum, the ALJ did not find plaintiff's testimony to be credible. *Id.* The ALJ stated that while plaintiff's impairment may have been "severe", plaintiff nonetheless retained the residual capacity to perform work-related activities except for work involving lifting or carrying in excess of twenty pounds on occasion or ten pounds on a frequent basis. *Id.,* at 5; *See also,* 20 C.F.R. §§ 404.1545, 416.945. The ALJ held that such jobs existed in significant numbers in the local and national economy, in part bolstered by the testimony of the vocational expert. (Op. at 4). Accordingly, the ALJ held that plaintiff had failed to establish that she had suffered from a disability within the meaning of the Act at any time through the date of his decision. *Id.; see also,* 20 C.F.R. §§ 404.1520(e), 416.920(e).

### D. *Plaintiff's Claims*

Plaintiff asserts that the ALJ committed reversible error in two respects. First, plaintiff argues that the ALJ's decision is not supported by "substantial evidence". Rather, plaintiff contends that the ALJ based his decision on "innuendo and baseless conclusions." *Plaintiff's Brief,* at 5. In addition, plaintiff asserts that the ALJ "placed undue reliance on the opinion of a non-treating consultative medical source to the detriment of a treating source." *Id.,* at 9. Second, plaintiff contends that the ALJ failed to adequately consider plaintiff's subjective complaints relating to the pain in her lower back.

**1. In denying plaintiff disability benefits, the ALJ based his decision on substantial evidence in the record, while properly considering Dr. Alfano's report.**

Plaintiff contends that the ALJ's decision was not based on substantial evidence and that the ALJ failed to properly consider Dr. Alfano's report. The district court, of course, is bound by the Secretary's findings of fact if those findings are supported by "substantial evidence" from the record as viewed in its entirety. 42 U.S.C. § 405(g); § 1383(c)(3); *Early v. Heckler,* 743 F.2d 1002, 1007 (3rd Cir.1984).

There is "substantial evidence", although perhaps not overwhelming, to support the ALJ's decision. In finding that plaintiff was not under a disability within the meaning of the Act, the ALJ relied primarily upon the medical reports filed in connection with this case. First, the ALJ pointed to the report reflecting plaintiff's initial examination following her injury. (Op. at 2). The ALJ observed that the examining physician detected no neurological abnormalities in the lower extremities and further advised plaintiff that she could return to work in five days. *Id.* The ALJ also relied upon the x-rays taken by the Newark Diagnostic Radiologists which revealed only mild scoliosis. *Id.* However, the ALJ seemed to place the greatest emphasis upon Dr. Forster's report which documented no significant clinical abnormalities, and diagnosed plaintiff with a "very mild" chronic lumbosacral sprain. (Op. at 3). Finally, the ALJ turned to the evidence which provided the greatest support for plaintiff's claims—the chiropractor's report—but noted that even this document evidenced considerable improvement in plaintiff's condition. *Id.,* at 2. When taken together, this medical evidence constitutes "substantial evidence" which supports the ALJ's decision.

Plaintiff contends, nevertheless, that the ALJ failed to accord proper weight to the opinion of Dr. Alfano as part of his review of the medical documentation inasmuch as Dr. Alfano represented plaintiff's only treating source. It is true that controlling weight is to be given to the treating physician's opinion if that opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evi-

dence in the record. *See* 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2). However, a chiropractor does not qualify as a treating physician under 20 C.F.R. §§ 404.1513(a) and 416.913(a). *Diaz v. Shalala,* 59 F.3d 307, 309 (2d Cir.1995). Rather, Dr. Alfano's findings are considered only as "information from other sources" which may help the Secretary understand how an individual's impairment affects her ability to work. *See* 20 C.F.R. §§ 404.1513(e) and 416.913(e). The ALJ has "discretion to determine the appropriate weight to accord the chiropractor's opinion based on all the evidence before him." *Diaz,* at 314. Further, the opinions of non-examining physicians may override a treating source's opinions provided that the former are supported by evidence in the record. *Schisler v. Sullivan,* 3 F.3d 563, 568 (2d Cir.1993) (citing 20 C.F.R. §§ 404.1527(f), 416.927(f)). Accordingly, this court must determine whether the ALJ abused his discretion in terms of the weight that he accorded Dr. Alfano's report.

■ Although the ALJ arguably relied upon selective portions of Dr. Alfano's report, this court cannot say that the ALJ abused his discretion in his use of that report. To begin with, it certainly cannot be said that the ALJ totally disregarded this report. Moreover, nowhere does the ALJ take issue with its findings.

More importantly, the ALJ is correct when he points out that even this report cannot be fully squared with plaintiff's own testimony. First, the report indicates that plaintiff was seeking treatment on less than a monthly basis despite plaintiff's claims to the contrary. Second, the report twice indicates that plaintiff's pain was not constant. Third, the report indicates that plaintiff had experienced considerable improvement in her condition from 1990 to 1992.

Finally, to the extent that the ALJ did not emphasize those notations of Dr. Alfano that might advance plaintiff's claim, this court cannot label such as an abuse of discretion in light of the medical evidence supplied by Dr. Forster and the Newark Diagnostic Radiologists which supported a contrary conclusion. *See Schisler,* 3 F.3d at 568.

**2. The ALJ's failure to fully credit plaintiff's subjective complaints of pain does not require reversal or remand in the instant case.**

■ Plaintiff vehemently asserts that the ALJ's failure to credit plaintiff's testimony as to the extent of her disability and pain requires reversal, or, at the very least, remand to a different ALJ for reconsideration. To this end, plaintiff levels a vicious personal attack at the ALJ, accusing him of "invok[ing] his usual array of non-sensical computerized pre-written poison to cloak his decision in pseudo-evidentiary language." *Plaintiff's Brief,* at 13. Although some of the ALJ's reasons for questioning plaintiff's credibility are at best weakly supported by the written record, there was nonetheless ample reason to find that her subjective complaints were not supported by the medical evidence.

■ As a preliminary matter, it is worth repeating that plaintiff bears the burden of demonstrating that her subjective complaints were substantiated by medical evidence. *Williams v. Sullivan,* 970 F.2d 1178, 1186 (3d Cir.1992), *cert. denied,* 507 U.S. 924, 113 S.Ct. 1294, 122 L.Ed.2d 685 (1993). Plaintiff must demonstrate by her testimony and medical history that she suffered from a condition which reasonably could be expected to produce the alleged symptoms that were the cause of her alleged inability to work. *Id.* In addition, it is well within the discretion of the Secretary to evaluate the credibility of a plaintiff's testimony and to render an independent judgment in light of the medical findings and related evidence regarding the true extent of such disability. *LaCorte v. Bowen,* 678 F.Supp. 80, 83 (D.N.J.1988). "Even in situations where a subjective complaint of pain coincides with a known impairment, it is within the *discretion of an ALJ to* discount that claim if there is a rational basis to do so." *Duncan v. Sullivan,* 786 F.Supp. 466, 470 (E.D.Pa.1992).

Here, the ALJ's finding that plaintiff's claims were not credible, at least as to the degree of pain and debilitation described, was justified in light of the medical evidence. No documentation supported her claim of constant, unremitting pain. The initial hospi-

talization record, of course, predicted a return to her place of employment after a mere five days. Further, the Newark Diagnostic Radiologists found only mild scoliosis. Dr. Forster's tests also revealed that plaintiff had a normal range of motion in her back, a normal gait, and no notable injuries that could be diagnosed, other than what he labeled a "very mild chronic lumbosacral sprain." (Rec. at 126). None of these reports can be easily reconciled with plaintiff's claims of debilitating pain and, together, they provide a reasonable basis for questioning plaintiff's credibility.

Although Dr. Alfano's report is more supportive of plaintiff's claims, it also provides a more explicit basis on which to question plaintiff's credibility. For instance, while the previously mentioned medical reports are silent as to pain, Dr. Alfano's report indicates that plaintiff complained of only intermittent pain inasmuch as she failed to show up for her monthly examinations except on those occasions when she was experiencing pain. (Rec. at 131). This, along with his report of considerable improvement in her condition, flies in the face of her testimony that her pain was constant and unchanged over two years. Further, Dr. Alfano's report indicates that plaintiff visited his office less than once a month after the initial period under his care, id., a fact that places into question plaintiff's claim that she visited him at least twice a month. Accordingly, when taken in conjunction with the medical evidence as a whole, Dr. Alfano's report provided ample reason to question plaintiff's credibility, and this court is mindful that the ALJ's findings about a claimant's credibility are entitled to "great weight". See Cotter v. Harris, 642 F.2d 700, 704 (3d Cir.1981).

■ In addition, the ALJ based his credibility determination on the minimal pain medication that plaintiff took for her condition and the failure of Dr. Alfano to recommend or prescribe any pain medication. It is entirely proper, of course, for an ALJ to attach significance to the type of medication a plaintiff takes for alleged pain. See Welch v. Heckler, 808 F.2d 264 (3d Cir.1986). While the use of Tylenol may be indicative of pain that is constant and uncomfortable, it does not support a conclusion that the pain it is taken to alleviate is so debilitating that the claimant is unable to work at all. Id. Accordingly, the pain medication used by plaintiff provided another legitimate basis for questioning the credibility of plaintiff's claims of debilitating pain.

■ The ALJ's reliance upon alleged inconsistencies concerning her ability to perform household chores, her activities with her grandson and her past work performance are more troublesome, however. Specifically, the ALJ pointed to discrepancies he perceived between plaintiff's answers on a preliminary form and during a telephone interview and with those that plaintiff offered at the hearing. While it is true that plaintiff stated in the preliminary form that she performed household chores once a week in contrast to her statement before the ALJ that she never performed such chores, this court attributes little significance to such a discrepancy. Further, her statement in the same form that "my activities with my 13 mo. old grandson [are] very limited" (Rec. at 108) is hardly inconsistent with her testimony that she has nothing to do with his care. (Tr. at 57). Finally, the ALJ's assessment of plaintiff's work record as "rather inconsistent" and "generally poor", (Op. at 4),— which appears to be based upon the fact that plaintiff held six jobs between 1976 and 1990—is, at best, tenuous. In sum, this court does not find any of these three reasons to provide substantial cause to question plaintiff's credibility, and accordingly will not consider them for purposes of determining whether the ALJ had legitimate reason to question plaintiff's credibility.[5]

5. This court does not find, however, that the inclusion of these reasons for questioning the credibility of plaintiff merits a finding of bias that would require a remand for a new hearing before a different ALJ as in Ventura v. Shalala, 55 F.3d 900 (3d Cir.1995). To begin with, it is unclear whether plaintiff followed the procedures for challenging bias. See 20 C.F.R. §§ 404.940, 416.1440. More importantly, the bias alleged in this case in no way approaches that which was evident in Ventura. Here, there was ample reason to question the credibility of plaintiff's claims based purely on the medical record. Moreover, this court is mindful that only

Nonetheless, the discrepancies between the medical evidence and plaintiff's testimony were significant and, in conjunction with the evidence concerning her minimal intake of pain medication, provided the ALJ with a legitimate basis to find that plaintiff's testimony lacked credibility. This is not to say that plaintiff has not suffered real pain as a result of her injury, but only that the debilitating level of pain of which she complains is not consistent with the medical evidence that was presented to the ALJ as part of her application. The ALJ adequately considered plaintiff's subjective complaints of pain, and found them wanting.

## IV. CONCLUSION

For the foregoing reasons, the decision of the Secretary will be affirmed. An appropriate order shall issue.

the ALJ had an opportunity to observe plaintiff's demeanor, a fact that entitles his assessment of credibility to great weight. *Cotter v. Harris,* 642 F.2d at 704. Nevertheless, this court would caution the ALJ to limit his credibility assessments to that which is clear from the record or apparent upon the examination of a claimant.